#27863-a-DG
**2017 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

REEDE CONSTRUCTION, INC.,                     Plaintiff, Counterclaim
                                              Defendant and Appellee,

v.

SOUTH DAKOTA DEPARTMENT
OF TRANSPORTATION,                            Defendant, Counterclaimant
                                              and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge
* * * *

RONALD G. SCHMIDT of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                      Attorneys for plaintiff, counter
                                              claim defendant and appellee.


JUSTIN T. CLARKE of
Davenport, Evans, Hurwitz
  & Smith LLP
Sioux Falls, South Dakota

and

EDWIN E. EVANS of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota                     Attorneys for defendant,
                                              counterclaimant and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2017
OPINION FILED **11/01/17**

#27863

GILBERTSON, Chief Justice

[¶1.] The South Dakota Department of Transportation (DOT) contracted with Reede Construction Inc. (Reede) to perform highway construction work in Sioux Falls. DOT refused to issue a letter of acceptance after requesting numerous repairs, many of which Reede never performed. Reede eventually left the job and demanded payment for the repairs it had completed. Reede sued, and DOT counterclaimed. At trial, the jury returned a verdict awarding no damages to either party. DOT filed a motion for a new trial, arguing insufficient evidence supported the jury's verdict. The circuit court denied the motion, and DOT appeals. We affirm.

**Facts and Procedural History**

[¶2.] In March 2006, DOT contracted with Reede to perform work on a portion of Interstate 29 and Highway 42 in Minnehaha County, South Dakota. DOT set June 29, 2007, as the completion date. On April 12, 2006, Reede sent a letter to DOT proposing a modified concrete mix design. DOT approved, appending a special provision to the contract allowing for a contractor-furnished mix design "sufficiently workable and finishable for all uses intended[.]" Use of the new mix design would "not relieve [Reede] from the responsibility for furnishing a concrete mix that meets specification and workability requirements."

[¶3.] In late 2006 and early 2007, DOT identified various defects in the pavement and concrete. On February 1, 2007, DOT sent a preliminary punch list of items requiring repairs to Reede. The punch list identified numerous instances of

cracking and joint spalling.[1]  In late April 2007, DOT observed additional cracking and distress in the concrete.  A DOT employee noted in an email that he "[had not] seen anything quite like this before in new pavement."  Reede responded in early May that it would repair the cracks it had identified prior to the roads being opened to traffic.  Further, Reede would do so at its own expense.  However, Reede requested reimbursement for repairs resulting from "damage caused by unforeseeable events beyond the control of the contractor," e.g., damage caused by traffic.  DOT agreed to compensate Reede for some of these repairs.  DOT claimed, though, that some of the damage stemmed from the concrete mix design and that Reede had contractually assumed responsibility for costs associated with pavement performance.  Reede disagreed with DOT's interpretation of the contract, arguing that while it bore responsibility for the concrete mix design used in the pavement, it could not be held responsible for performance of the pavement itself.

[¶4.]        In June 2007, concerns arose regarding surface finish, transverse and longitudinal cracking, joint spalling, and other "spider web like cracking."  In late June, DOT contacted Reede to again request repairs while denying that "acts of God or others contributed to the pavement failure."  DOT also contacted Reede in July regarding the need to remove panels on I-29 "due to poor consolidation and unacceptable finish."  DOT further requested Reede provide DOT "a written position on the cause of the above noted conditions and the course proposed to correct these issues."

---

1.    Joint spalling refers to the breaking off, chipping, cracking, or fraying of concrete at the joint.

[¶5.] In November 2007, Reede sent DOT a letter containing the observations of James LaFrenz, a concrete expert Reede had hired, regarding the condition of the project. DOT reviewed LaFrenz's letter and determined it needed to conduct further analysis. DOT informed Reede that once it finished its examination, DOT would issue a work order detailing repairs that needed completing before Reede could receive final acceptance.

[¶6.] On February 28, 2008, DOT sent Reede a letter listing issues still outstanding on the project, including the need for concrete pavement repairs. Reede responded it would make additional inspections of the concrete. In July 2008, DOT sent Reede a work order requesting pavement repairs. DOT received no response. In September, DOT requested a written statement detailing what Reede intended to do. On February 6, 2009, Reede wrote back that it "recogniz[ed] the request to complete the concrete repairs" and "intend[ed] . . . to execute the work needed to complete the work requested." However, Reede again requested reimbursement for any such repairs. DOT responded that Reede would need to file a formal claim, and DOT reiterated its position that any costs for repairs should be borne by Reede.

[¶7.] In March 2009, Reede sued DOT, claiming breach of contract, quantum meruit, and unjust enrichment. DOT counterclaimed for breach of contract and breach of implied warranty of workmanship. The parties conducted extensive discovery. On November 9, 2015, a ten-day jury trial commenced. Both sides offered numerous exhibits, and the jury heard extensive testimony, including from experts. The jury returned a verdict awarding no damages to either party. On February 17, 2016, DOT filed a motion for a new trial. On April 11, the circuit court

indicated orally that it would deny the motion.  On April 13, the court issued its order denying DOT's motion for a new trial.

[¶8.]       DOT appeals, arguing the circuit court abused its discretion by not granting DOT's motion for a new trial.  Reede responds that DOT failed to preserve the issue for review by failing to make a motion for a judgment as a matter of law.

## Analysis and Decision

[¶9.]       At issue is whether a motion for a judgment as a matter of law must be made before a motion for a new trial based on insufficient evidence to justify the verdict.  *See generally* 9B Arthur R. Miller, *Federal Practice and Procedure* § 2531 (3d ed.), Westlaw (database updated April 2017).  DOT argued in its motion for a new trial that insufficient evidence supported the jury's verdict.  DOT again makes this argument on appeal.  However, Reede contends DOT failed to preserve its right to appeal on this issue, citing SDCL 15-6-59(f) and SDCL 15-6-50(a)(1)–(2).  SDCL 15-6-59(f) provides:

> A motion for a new trial shall not be necessary as a prerequisite to obtain appellate review as to matters specified in subdivisions 15-6-59(a)(6) and (7), and all such matters may be reviewed on an appeal from the judgment, regardless of whether a motion for a new trial has been made, provided such matter has been submitted to the trial court as prescribed in § 15-26A-8.

SDCL 15-6-59(a)(6) provides that a new trial may be granted if there is insufficient evidence to justify the verdict.  SDCL 15-26A-8 provides that a claim of insufficiency of the evidence is preserved on appeal "without necessity for an application for a new trial" so long as the appellant made a timely motion for directed verdict, request for findings, or "other apt motion, offer, or objection[.]"  SDCL 15-6-50(a)(1) provides that a motion for a judgment as a matter of law tests whether "there is no

-4-

legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue[.]" SDCL 15-6-50(a)(2) governs when a motion for a judgment as a matter of law can be made.

[¶10.] Reede argues that to preserve appellate review, SDCL 15-6-59(f) and 15-26A-8 require a timely motion for judgment as a matter of law or other apt motion be made. According to Reede, "[a] motion for a new trial is *not* included within the intent of SDCL §§ 15-6-59(f) and 15-26A-8," citing *Bedney v. Heidt*, 1998 S.D. 50, ¶ 16, 578 N.W.2d 570, 573 ("The methods described in SDCL 15-26A-8 do not include a motion for new trial."). Reede contends that although DOT made a motion for a new trial pursuant to SDCL 15-6-59(a)(6), a motion for a new trial is *not* an apt motion that preserves DOT's right to appeal.

[¶11.] However, this argument misconstrues the purpose of SDCL 15-6-59(f). SDCL 15-6-59(f) simply provides an avenue by which a party can obtain appellate review for insufficiency of the evidence *absent* a motion for a new trial. *See Pearson v. Adams*, 279 N.W.2d 674, 676-77 (S.D. 1979) (denying review of insufficiency question because appellant failed to make both a timely motion for a new trial or "other apt motion"); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 396, 126 S. Ct. 980, 983, 163 L. Ed. 2d 974 (2006) (holding that failure to make a renewed motion for judgment as a matter of law pursuant to Rule 50(b) or a motion for a new trial under Rule 59 precluded trial court's review of sufficiency of the evidence challenge). DOT correctly observes that in this case, SDCL 15-6-59(f) and 15-26A-8 "are inapplicable because DOT filed a motion for a new trial." Indeed, Reede cites cases supporting this very proposition. *See, e.g., Bedney*, 1998 S.D. 50,

¶¶ 12-17, 578 N.W.2d at 572-73 (holding that failure by circuit court to grant a motion for a new trial within twenty days pursuant to SDCL 15-6-59(b) meant that preservation of the issue on appeal required another apt motion under SDCL 15-6-59(f)); *In re Appeals of Bottcher*, 78 S.D. 360, 362, 102 N.W.2d 623, 624 (S.D. 1960) ("Insufficiency of the evidence to justify the decision is one of the causes for granting a new trial . . . and on appeal from the order made on such application this court may then inquire into its propriety on that ground.").[2]

[¶12.]     Nevertheless, under the facts of this case, DOT's failure to make a motion for a judgment as a matter of law forecloses our review of DOT's claims on appeal. DOT argues that the evidence was insufficient to support the jury's verdict because the "overwhelming evidence presented at trial proved Reede breached the

---

2.     Courts disagree about whether a post-verdict motion for a new trial pursuant to Rule 59, absent a Rule 50 motion for a judgment as a matter of law, preserves the issue of insufficiency on appeal. Some courts with statutes similar to South Dakota's have said that a motion for a new trial due to insufficient evidence actually tests the weight of the evidence. *See, e.g.*, *Kafader v. Baumann*, 290 P.3d 236, 239 (Idaho Ct. App. 2012) ("When a motion for a new trial is based on the ground of insufficient evidence to justify the verdict, the trial court must weigh the evidence presented at trial and grant the motion only where the verdict is not in accord with its assessment of the clear weight of the evidence."); *Gisvold v. Windbreak, Inc.*, 730 N.W.2d 597, 598 (N.D. 2007) ("[Trial court] may set aside a jury verdict when, in considering and weighing all the evidence, the court's judgment tells it the verdict is wrong because it is manifestly against the weight of the evidence."). This test differs from the one employed in the context of a motion for a judgment as a matter of law, suggesting that a motion for a new trial examines a different question. *See* Miller, *supra* ¶ 9 § 2531. Nevertheless, other courts have said that failure to make a motion for a judgment as a matter of law precludes a motion for a new trial that is based on insufficient evidence. *See, e.g.*, *Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1184 n.7 (Fed. Cir. 2002); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1262-63 (3d Cir. 1991); *Chambers v. Smith*, 198 S.E.2d 806, 809 (W. Va. 1973).

parties' contract" and that such breach caused at least some of DOT's damages. DOT's insufficiency claim thus requires us to make a judgment as a matter of law on issues of contract interpretation, breach, and causation. However, when asked at trial whether it wished to make a motion for a judgment as a matter of law, DOT declined. It claimed issues of fact existed on the question of breach.

[¶13.] Having gambled on the verdict and lost, DOT now attempts to fashion its request for a judgment as a matter of law as a motion for a new trial. *See ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96-97 (2d Cir. 2014) (finding that a party's Rule 59(e) motion to alter or amend the judgment "was substantively identical to judgment as a matter of law under Rule 50, as it sought to have the jury's verdict on attorney's fees set aside and to have judgment entered in its favor on that issue"); *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 552 (3d Cir. 2010) (Jordan, J., dissenting) ("[Appellant] cannot circumvent its obligation to file a Rule 50 motion by styling its post-trial motion as a [Rule 59] motion to amend . . . when what it really argues for is judgment as a matter of law due to insufficient evidence."). Further, none of the exceptions to foreclosure of sufficiency questions applied by courts elsewhere apply in this case. *See Yohannon v. Keene Corp.*, 924 F.2d 1255, 1262 n.7 (3d Cir. 1991) (observing that courts excuse the failure to make a proper motion for a judgment as a matter of law when it would prevent a manifest injustice, when no evidence supports the jury's verdict, or when the motion can be reinterpreted as a different motion).

[¶14.] Both DOT and Reede testified as to their interpretations of the contract, and both parties presented expert witnesses on the issues of causation

with respect to damage to the road. Moreover, because the jury returned a general verdict, this Court cannot conclusively determine whether the jury based its verdict on any number of defenses offered by Reede. This Court has said that it will "presume a general verdict is based on one or all of the presented theories." *Gettysburg Sch. Dist. 53-1 v. Helms & Assocs.*, 2008 S.D. 35, ¶ 16, 751 N.W.2d 266, 273, *overruled on other grounds by Casper Lodging, LLC v. Akers*, 2015 S.D. 80, 871 N.W.2d 477. "In a civil case, if a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory." *Lenards v. DeBoer*, 2015 S.D. 49, ¶ 14, 865 N.W.2d 867, 871 (quoting *Thomas v. Sully Cty.*, 2001 S.D. 73, ¶ 7, 629 N.W.2d 590, 592). Without determining as a matter of law whether Reede breached the contract or that such breach necessarily caused DOT damages, we cannot say the jury's verdict was unsupported by any valid legal theory or evidence. Therefore, the "motion [could] not properly be granted by the [circuit] court, or upheld on appeal[.]" *See ING Global*, 757 F.3d at 97.

[¶15.] Affirmed.

[¶16.] ZINTER, SEVERSON, and KERN, Justices, and WILBUR, Retired Justice, concur.