#28695, #28719-a-MES
**2019 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,                Plaintiff and Appellant,

    v.

GIYO BRYAN MIRANDA,                          Defendant, Third-Party
                                             Claimant and Appellee,

    v.

JOHN DOE,                                    Third-Party Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ERIC J. STRAWN
Judge

\* \* \* \*

BENJAMIN L. KLEINJAN of
Helsper, McCarty & Rasmussen, P.C.
Brookings, South Dakota                      Attorneys for plaintiff and
                                             appellant.


MATTHEW J. MCINTOSH of
Beardsley, Jensen & Lee, Prof. LLC
Rapid City, South Dakota                     Attorneys for defendant and
                                             appellee.

\* \* \* \*

ARGUED FEBRUARY 21, 2019
OPINION FILED **08/07/19**

SALTER, Justice

[¶1.]      Giyo Miranda lost control of his vehicle, resulting in a head-on collision with another vehicle driven by Loyd Nielson. A third, unidentified vehicle was also allegedly involved in the incident. Nielson's insurer, State Farm Mutual Auto Insurance Company (State Farm), pursued subrogation recovery against Miranda. The case was tried to a jury which returned a general verdict in favor of Miranda. The circuit court subsequently denied State Farm's motion for a new trial. State Farm appeals. We affirm.

## Facts and Procedural History

[¶2.]      On November 20, 2013, 18-year-old Miranda and his older brother Kevin were traveling in a minivan back to Belle Fourche from Rapid City on I-90. Miranda was driving and exited at Whitewood before turning right and continuing west on Highway 34. Miranda explained he was traveling at approximately 30-35 mph in an area where the speed limit changes from 30 mph to 45 mph. The road conditions were icy due to freezing drizzle and snow accumulation on the road. As Miranda continued along an initial curve on Highway 34, he claimed that an unknown vehicle traveling eastbound entered his westbound lane and approached him head-on. Miranda said he swerved to the right shoulder of the road to avoid a collision. When he attempted to pull his minivan back onto the road, it began to slide. Miranda tried to correct the slide, but skidded into the eastbound lane instead and collided with a pickup driven by Nielson.

[¶3.]      Nielson, who was insured by State Farm, was traveling home to Hot Springs after leaving an auction in the area. At the subsequent trial, Nielson

initially testified that he did not recall seeing a third vehicle before the collision. However, he later acknowledged that there was an unidentified vehicle driving approximately 100 yards in front of him. Nielson also testified that he could see the vehicle apply its brakes in the area where the collision occurred a short while later.

[¶4.] After paying benefits under several separate coverages included in an automobile policy[1] issued to Nielson, State Farm pursued a subrogated claim against Miranda, alleging negligence. The case was tried to a jury on April 26–27, 2018. Throughout the case, State Farm maintained the factual theory that the third-party vehicle Miranda described was either nonexistent or never came into his lane of travel.[2] Miranda, however, persisted in his position that the vehicle had been present and had swerved into his lane, causing the sequence of events that led to the collision with Nielson.

[¶5.] At the completion of the trial, the circuit court instructed the jury on State Farm's theories of general negligence and negligence per se.[3] The court further instructed the jury that if it found Miranda had acted negligently, it could

---

1. State Farm paid benefits under the policy's collision, medical payments, and uninsured motorist coverages.

2. State Farm's factual argument that the third, unidentified vehicle did not exist or did not cause the collision seems incongruous with its decision to pay Nielson uninsured motorist benefits based upon its determination that the collision was caused by an uninsured "phantom vehicle." *See Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 31 (S.D. 1978) (holding that uninsured motorist coverage is available when an unknown vehicle causes an accident and resulting damages). However, the parties have not suggested this factual incongruity is significant to our decision here.

3. State Farm alleged Miranda violated safety statutes requiring motorists to remain within their lane of travel and prohibiting speeding.

excuse the negligence if it determined he had confronted a sudden emergency not of his own making.[4]

[¶6.]       The circuit court also provided the jury with a detailed instruction describing the individual questions presented and how its determinations would impact the verdict. For example, the first two questions for the jury related to the issues of standard negligence and legal cause:

> The issues to be determined by you in this case are these:
>
> First, was Defendant Giyo Miranda negligent on November 20, 2013?
>
> If your answer to that question is "no," you must return a verdict for Defendant Giyo Miranda. If your answer is "yes," you will have a second issue to determine, namely:
>
> Was that negligence a legal cause of any injury to Plaintiff State Farm?
>
> If you find Defendant's negligence was not a legal cause of Plaintiff State Farm's injuries, Plaintiff is not entitled to recover damages and you must return a verdict for the Defendant.

Only if the jury determined Miranda had acted negligently and had caused the collision did the court instruct the jury to move on and consider the questions related to the presence of a sudden emergency.

---

4.    Miranda argues that any common law negligence could be excused under what is commonly known as the sudden emergency doctrine. One of the constituent elements of that doctrine is the requirement that the person who faced the emergency did not act negligently to create the emergency. *See Meyer v. Johnson*, 254 N.W.2d 107, 110 (S.D. 1977). Under a closely related theory, negligence per se may also be excused if a negligent party confronted a sudden emergency. *See Dartt v. Berghorst*, 484 N.W.2d 891, 896 (S.D. 1992).

[¶7.]        Notwithstanding this detailed instruction concerning the order and effect of the jury's individual factual determinations, the verdict form did not include corresponding special interrogatories. Following its deliberation, the jury returned a general verdict in favor of Miranda that stated only, "[w]e, the jury, duly impaneled in the above-entitled action, and sworn to try the issues, find for the [d]efendant." State Farm moved for a new trial and later sought to supplement the record after realizing one of its proposed instructions was not contained in the clerk's record. Miranda opposed both motions. The circuit court denied State Farm's motion for a new trial, but granted its motion to supplement the record and an oral motion to amend the pleadings to conform to the evidence.

[¶8.]        State Farm appeals, raising the following issues for our review:

1.    Whether the circuit court abused its discretion when it instructed the jury on the sudden emergency doctrine.

2.    Whether the circuit court abused its discretion when it instructed the jury regarding legal excuse for violation of a safety statute.

3.    Whether the circuit court abused its discretion when it provided an allegedly incomplete instruction on the effect of the sudden emergency doctrine and an allegedly incorrect instruction detailing the specific sequence of the jury's individual determinations.

Miranda also raises the following issues by notice of review:

4.    Whether the circuit court abused its discretion in granting State Farm's motion to amend the pleadings to conform to the evidence.

5.    Whether the circuit court abused its discretion in granting State Farm's motion to supplement the record.

**Analysis & Decision**

[¶9.]      Both parties have submitted thorough briefs on the merits of the issues they believe are presented.  However, neither party has addressed the significance of the jury's general verdict.  We believe we must consider this issue on our own accord.  Even if we were to accept State Farm's argument that the circuit court abused its discretion by instructing the jury as it did, our cases require us to assess the prejudicial impact of the court's instructions, and we would inevitably be forced to confront the issue.[5]

[¶10.]      "A party challenging as erroneous a jury instruction must show not only that the instruction was in error, but also that it was prejudicial error to the effect that under the evidence, the jury . . . probably would have returned a different verdict."  *Veeder v. Kennedy*, 1999 S.D. 23, ¶ 34, 589 N.W.2d 610, 618 (citations and quotations omitted).  Where a jury returns a general verdict in a case tried upon multiple theories, though, establishing prejudice is difficult because the basis for the jury's verdict is likely uncertain.  With a general verdict, "this Court cannot conclusively determine whether the jury based its verdict on any number of defenses . . ." or other theories offered by the parties to a case.  *Reede Constr., Inc. v. S.D. Dep't of Transp.*, 2017 S.D. 63, ¶ 14, 903 N.W.2d 740, 745.  Indeed, "if a general

---

5.    "This Court reviews 'the circuit court's decision to grant or deny a specific jury instruction for an abuse of discretion.'" *City of Rapid City v. Big Sky, LLC*, 2018 S.D. 45, ¶ 21, 914 N.W.2d 541, 547 (quoting *Montana–Dakota Utils. Co. v. Parkshill Farms, LLC,* 2017 S.D. 88, ¶ 25, 905 N.W.2d 334, 343). An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Krueger v. Grinnell Mut. Reinsurance Co.*, 2018 S.D. 87, ¶ 12, 921 N.W.2d 689, 693 (quoting *Thurman v. CUNA Mut. Ins. Soc'y,* 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616).

verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory." *Id.* (quoting *Lenards v. DeBoer*, 2015 S.D. 49, ¶ 14, 865 N.W.2d 867, 871). "Only if there is 'an affirmative showing in the record to the contrary,' will we abandon this assumption." *Thomas v. Sully Cty.*, 2001 S.D. 73, ¶ 7, 629 N.W.2d 590, 592 (quoting *Limmer v. Westegaard*, 251 N.W.2d 676, 679 (S.D. 1977)).

[¶11.]     Special verdict forms, by contrast, can be useful for clarifying the basis of a jury's verdict and assisting a reviewing court in appropriate cases. For instance, a special verdict form may prove illuminating in a case involving complex issues or perhaps multiple or novel claims. *See Miller v. Hernandez*, 520 N.W.2d 266, 271 (S.D. 1994) ("A special verdict makes it clear that the novel theory may have had no effect, or what effect it had on the jury's ultimate determination.").

[¶12.]     Here, though, neither party requested a special verdict form or objected to the circuit court's decision to utilize a general verdict form. They were successful in their efforts to have the court provide detailed instructions to assist the jury with the liability theories and defenses presented in the case. However, the general verdict form, by its nature, is imprecise and does not permit a safe inference about the specific basis for the jury's defense verdict.

[¶13.]     It may well be that the jury's verdict had nothing to do with State Farm's principal claim that the court incorrectly allowed the jury to consider excusing negligence under Miranda's sudden emergency theory. Included among the first issues for the jury to consider were basic inquiries relating to the existence

of negligence and legal cause. The court's instruction advised the jury that it must return a verdict for the defendant if it found Miranda was not negligent or if it concluded his negligence was not the legal cause of the collision.

[¶14.] Based upon our review of the record, it is possible that the jury could have determined that State Farm simply did not prove the necessary elements of negligence. The jury could have, for example, concluded that Miranda did not act unreasonably in taking evasive action or perhaps it found that the unidentified vehicle was the sole cause of the collision with Nielson. Either one of these determinations would have constituted a permissible basis for the jury's verdict. There is nothing discernible in the record which would establish that the jury first determined the existence of negligence only to then find it was excused under the disputed sudden emergency defense.

[¶15.] Therefore, "[b]ecause a general verdict form was used, we have no way of knowing" what basis the jury selected for its decision, and we cannot assess the impact of the disputed instructions even if we were to hold the court abused its discretion in giving them. *Lenards*, 2015 S.D. 49, ¶ 14, 865 N.W.2d at 871. Under the circumstances, we conclude that State Farm cannot establish any prejudice from the circuit court's instructions, and we must affirm because we are unable to exercise meaningful appellate review on the merits of State Farm's claims. Given our disposition, it is unnecessary to reach Miranda's issues raised upon notice of review. We affirm.

[¶16.] GILBERTSON, Chief Justice, and JENSEN, Justice, and KONENKAMP, Retired Justice, concur.

[¶17.]        KERN, Justice, concurs specially.


KERN, Justice (concurring specially).

[¶18.]        I write to stress my view that instructing the jury on the sudden emergency doctrine was improper.  The sudden emergency doctrine, a concept developed at common-law, attempts to assist a jury in judging the negligence of a party who is "confronted by a sudden and unexpected danger, [when] . . . the dangerous situation was not brought about by the party's own negligence[.]"  *See Meyer*, 254 N.W.2d at 110.

[¶19.]        Over forty years ago, we noted the sudden emergency instruction "is merely an expansion of the reasonably prudent person standard of care."  *See id.*  Instructing the jury on the elements of negligence, we explained, is typically adequate because it informs the jury of the principles of "negligence, contributory negligence, burden of proof, and proximate cause."  *See id.* (quoting *Cordell v. Scott*, 79 S.D. 316, 322, 111 N.W.2d 594, 598 (S.D. 1977)) (analyzing an unavoidable accident instruction).  We repeated this sentiment in *Carpenter v. City of Belle Fourche* where we noted that use of the sudden emergency instruction "served only to improperly emphasize the defendants' position[,]" at trial.  2000 S.D. 55, ¶ 32, 609 N.W.2d 751, 764.

[¶20.]        Concern over the instruction's tendency to confuse has led several jurisdictions to abolish it altogether.[6]  Others have prohibited it in cases involving

---

6.        *See Knapp v. Stanford*, 392 So. 2d 196, 198-99 (Miss. 1980); *Cowell v. Thompson*, 713 S.W.2d 52, 54 (Mo. Ct. App. 1986); *McClymont v. Morgan*,

automobile accidents.[7]  And others have questioned its usefulness or drastically restricted its use.[8]  In rejecting or diminishing use of the instruction, some courts have commented that claiming a sudden emergency is the same as denying negligence.  *See Lawrence v. Deemy*, 461 P.2d 770, 774 (Kan. 1969).

[¶21.]        A sudden emergency instruction seldom, if ever, provides the jury with helpful insight on the general standard of care.  The risk associated with confusing the jury on the elements of negligence is not worth any slight benefit garnered from providing the instruction.  If it is given at all, its use should be confined to the rarest of cases involving an emergency a defendant could not reasonably be expected to anticipate based on the circumstance surrounding his or her allegedly negligent conduct.  *See Myhaver v. Knutson*, 942 P.2d 445, 450-51 (1997).  I expressed similar concerns about the unavoidable accident instruction in *Lenards v. DeBoer*, 2015 S.D. 49, ¶¶ 17-23, 865 N.W.2d 867, 871-72 (Kern, J., concurring specially).

[¶22.]        If a court denies a party's request for the instruction, nothing precludes the parties from defending themselves on the basis that they faced an

---

(. . . continued)
        470 N.W.2d 768, 772 (Neb. 1991); *Lyons v. Midnight Sun Transp. Serv., Inc.*, 928 P.2d 1202, 1205 (Alaska 1996) ("[B]arring circumstances that we cannot at the moment hypothesize, a sudden emergency instruction serves no positive function.").

7.      *See Simonson v. White*, 713 P.2d 983, 989 (Mont 1986); *Finley v. Wiley*, 246 A.2d 715, 719 (N.J. Super. Ct. App. Div. 1968).

8.      *See DiCenzo v. Izawa*, 723 P2d 171, 181 (Haw. 1986); *Keel v. Compton*, 256 N.E.2d 848, 853 (Ill. App. Ct. 1970); *Bayer v. Shupe Bros. Co.*, 576 P.2d 1078, 1080 (Kan. 1978); *Gagnon v. Crane*, 498 A.2d 718, 721 (N.H. 1985);

emergency. Litigants are free to attack causation by presenting evidence about the circumstances leading up to the allegedly tortious conduct. A jury is then charged with assessing whether the defendant legally caused the injuries through his or her own negligence in response to the claimed emergency. The jury in this case was provided with the definition of legal cause, which was sufficient to guide the jury in properly analyzing the case. Therefore, in my view, it was error to instruct the jury on the sudden emergency doctrine in this case.

[¶23.] Yet "without an affirmative showing in the record to the contrary, we construe the jury verdict as rendered upon the properly submitted legal theory . . . , rather than upon one improperly submitted." *See Limmer v. Westegaard*, 251 N.W.2d 676, 679 (S.D. 1977). Because there is a proper theory to support the jury's general verdict—i.e., the possibility that the jury concluded Miranda was not negligent—I agree that the circuit court should be affirmed.