#28952, #28969-a-MES

**2021 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JODIE M. FRYE-BYINGTON,                    Plaintiff and Appellant,

v.

RAPID CITY MEDICAL CENTER,
LLP, GARY L. WELSH, M.D.,
ROBERT C. BURGESS, M.D., and
MICHAEL C. RAFFERTY, M.D.,                    Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE THOMAS L. TRIMBLE
Retired Judge

\* \* \* \*

R. SHAWN TORNOW
Sioux Falls, South Dakota                    Attorney for plaintiff
                                             and appellant.


LONNIE R. BRAUN
GREGORY J. BERNARD
KIMBERLY PEHRSON of
Thomas, Braun, Bernard,
   & Burke, LLP
Rapid City, South Dakota                    Attorneys for defendants and
                                             appellees.

\* \* \* \*

ARGUED
OCTOBER 6, 2020
OPINION FILED **01/20/21**

#28952, #28969

SALTER, Justice

[¶1.]     Jodie Frye-Byington brought a negligence claim against Rapid City Medical Center (RCMC) and three of its doctors (collectively, the Appellees), alleging the doctors did not inform her of a mass growing in her chest for six years. Jodie asserts that the mass caused her persistent issues with her throat and chest that continued until the mass was removed. Following a six-day jury trial, the jury returned a verdict in favor of RCMC and the named doctors. On appeal, Jodie argues that the circuit court abused its discretion in refusing to allow her to call two rebuttal witnesses and refusing her proposed jury instruction on agency. The Appellees also raise several issues by notice of review. We affirm.

## Background

[¶2.]     Jodie Frye-Byington sought medical care at RCMC from 2008 to 2014 for complaints of a constant cough, hoarseness, neck pain and swelling, difficulty breathing, and chest pain. Several radiographic images taken between 2008 and 2014 revealed a mass in her chest, but Jodie asserts she was not told of its presence. Over time, the mass grew to about seven centimeters in length, and doctors at the Mayo Clinic removed the mass in September 2014. The mass, known as a mediastinal mass, was determined to be benign thyroid tissue that regrew after doctors removed her thyroid prior to 2008.[1]

---

1.    Jodie was previously diagnosed with Hashimoto's thyroiditis, an autoimmune disorder that attacks the thyroid. As a result, doctors removed the left side of her thyroid in 1996, and the right side was removed in 2005. Jodie maintains a proper thyroid hormone level by taking Synthroid, a synthetic hormone replacement medication.

[¶3.] In July 2016, Jodie commenced this action against RCMC and three of its physicians, alleging malpractice for misdiagnosing her condition and failing to inform her of the mass. Jodie's principal claim was that Dr. Robert Burgess, an ear, nose, and throat specialist (ENT), was negligent for not telling Jodie about the mass in 2008 when it was first seen on a CT scan. Her claims against Dr. Michael Rafferty and Dr. Gary Welsh, both family practice physicians, were that they similarly failed to advise her of the mass. Jodie's expert witness, a family practice physician, concluded that the standard of care for a physician—regardless of specialty—required disclosure of the mass to the patient.

[¶4.] Dr. Burgess moved for summary judgment, arguing that Jodie's claim against him was time-barred under South Dakota's two-year medical malpractice statute of repose. *See* SDCL 15-2-14.1. The circuit court denied Dr. Burgess' motion based upon the continuing tort doctrine, which, when applicable, operates to delay the commencement of the repose period.

[¶5.] During the six-day jury trial, the Appellees objected to portions of the testimony of Jodie's expert witness, alleging some of her opinions were not previously disclosed and that she was not qualified to render an opinion on the standard of care for Dr. Burgess. The Appellees also objected to Jodie's effort to support her malpractice allegations by claiming negligent conduct by an RCMC doctor not named in her suit. The court overruled these objections.

[¶6.] After the Appellees rested, Jodie's counsel asked to call two radiologists as rebuttal witnesses, arguing they were necessary to rebut Dr. Burgess' testimony that he had not previously seen two draft radiology reports. The

court denied the request, explaining that Jodie's counsel should have offered the documents as exhibits in its case-in-chief.

[¶7.]     At the close of Jodie's case and again the at the close of the evidence, the Appellees moved for judgment as a matter of law, arguing Jodie's expert failed to produce testimony establishing the correct standard of care for an ENT specialist, such as Dr. Burgess. The Appellees also claimed that Jodie's expert failed to provide sufficient testimony to support the malpractice claims against each of the named providers. The court denied these motions and also denied Jodie's proposed jury instruction describing RCMC's vicarious liability in the event the jury found RCMC's doctors negligent.

[¶8.]     The jury returned a verdict in favor of RCMC and the named physicians. Jodie raises the following issues on appeal:

1.     Whether the circuit court abused its discretion when it denied her request to call two rebuttal witnesses.

2.     Whether the circuit court abused its discretion when it denied her proposed jury instruction regarding RCMC's vicarious liability.

[¶9.]     By notice of review, the Appellees also raise the following additional issues:[2]

1.     Whether the circuit court erred when it denied Dr. Burgess' motion for summary judgment.

2.     Whether the circuit court erred when it denied Dr. Burgess' motion for judgment as a matter of law.

---

2.     At oral argument, counsel for the Appellees advised the Court that they would not seek review of their issues if we affirmed the jury verdict. Having determined that affirmance is proper, we therefore will not address the Appellees' issues.

3.     Whether the circuit court erred when it denied the Appellees' motion for judgment as a matter of law.

4.     Whether the circuit court abused its discretion when it allowed expert testimony alleged to be previously undisclosed.

5.     Whether the circuit court abused its discretion when it allowed evidence of an unnamed provider's alleged negligent care to be attributed to the named defendants.

## Analysis

### *Denial of Jodie's Request for Two Rebuttal Witnesses*

[¶10.] "Our standard of review for evidentiary rulings 'requires a two-step process[:] first, to determine whether the trial court abused its discretion in making an evidentiary ruling; and second, whether this error was a prejudicial error that "in all probability" affected the jury's conclusion.'" *Johnson v. United Parcel Serv., Inc.*, 2020 S.D. 39, ¶ 27, 946 N.W.2d 1, 8 (quoting *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d 474, 491) (alteration in original) (emphasis omitted). "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Id.* (quoting *Andrews v. Ridco, Inc.*, 2015 S.D. 24, ¶ 14, 863 N.W.2d 540, 546).

[¶11.] "Rebuttal evidence is that which explains, contradicts, or refutes the defendant's evidence. Its purpose is to cut down [the] defendant's case and not merely to confirm that of the plaintiff[]." *Shrader v. Tjarks*, 522 N.W.2d 205, 209 (S.D. 1994) (citation omitted); *see also* SDCL 15-14-1(6) (explaining how rebuttal

evidence may be offered during trial).  "Rebuttal is appropriate only when the defense injects a new matter or new facts."  *Id.* (citation omitted).

[¶12.]       At the heart of Jodie's request for rebuttal testimony were two draft radiology reports from 2010 and 2011,[3] which she claims indicate the mediastinal mass had grown since it was first detected in 2008.  The draft reports Jodie sought to offer each contain a "cc" notation indicating Dr. Burgess received a copy.  However, RCMC's medical records do not contain the same "cc" notation, and Dr. Burgess flatly denied ever seeing the 2011 draft report when Jodie's counsel asked him at his deposition five months before trial.  Jodie's counsel did not show Dr. Burgess the 2010 draft report at his deposition.

[¶13.]       At trial, Jodie's counsel attempted to cross-examine Dr. Burgess by comparing the 2010 draft report to the version of the report contained in Jodie's RCMC medical records in an apparent effort to demonstrate that, because the draft report contained the "cc" notation, Dr. Burgess had seen it.  However, neither of the draft reports were admitted as evidence, and the circuit court sustained the Appellees' objection for lack of foundation.

[¶14.]       After the defense rested, Jodie's counsel sought to offer rebuttal testimony from the two radiologists who prepared the reports which Dr. Burgess denied ever seeing.  According to an impromptu offer of proof by Jodie's counsel, the radiologists would testify that their draft reports listed Dr. Burgess as receiving a

---

3.       The two draft reports were Jodie's March 18, 2010 thyroid biopsy ultrasound report and her March 21, 2011 chest computerized tomography report.

copy through a "cc" reference. Jodie's counsel did not produce affidavits from the two radiologists, and they were not present in court.[4]

[¶15.] The circuit court denied Jodie's request to offer the rebuttal testimony, reasoning that Jodie's counsel knew there were foundation issues associated with the draft reports from the two radiologists well in advance of trial. Therefore, in the court's view, Jodie's counsel should have sought to introduce the exhibits with the proper foundation in Jodie's case-in-chief in order to then discuss the records with Dr. Burgess during his cross-examination. Doing so would have removed the evidentiary impediment and allowed the presentation of the draft report evidence during the principal evidentiary portion of the case, as Jodie had contemplated.

[¶16.] We find no abuse of discretion in the circuit court's decision to exclude the proffered testimony of the radiologists and question whether it was rebuttal evidence at all. It appears from the record that Jodie's counsel originally planned to use the radiologists' draft reports during Dr. Burgess' cross-examination to suggest he had seen the draft reports showing the mediastinal mass had grown, not as rebuttal evidence. Prior to trial, counsel for the Appellees anticipated this and specifically advised at the pretrial conference that the Appellees would not stipulate to the authenticity of the draft reports. Although they agreed that all of Jodie's other medical records could be admitted without foundation, Appellees' counsel indicated at the pretrial conference that they were unwilling to accede to the

---

4.    Counsel for Jodie attempted to serve subpoenas on the radiologists, but they did not appear because they alleged through their counsel that service was insufficient. Consequently, the circuit court's decision to deny Jodie's request for testimony from rebuttal witnesses who were not present could be affirmed on this basis alone.

admission of the draft reports at trial because they were not included in RCMC's

official medical records, and counsel expressed uncertainty regarding their origin.

[¶17.] However, at trial, Jodie's counsel did not seek to lay foundation to

authenticate the two draft reports in her case-in-chief, and the effort to cross-

examine Dr. Burgess about them stalled when the court sustained the Appellees'

foundation objections. Viewed in context, therefore, Jodie's counsel was not using

the proposed rebuttal testimony to "cut down" Dr. Burgess' testimony because it

"injected a new matter or new facts" into the case. It was, instead, an effort to

belatedly authenticate the draft reports Jodie had unsuccessfully offered as

evidence earlier in the trial.[5]

[¶18.] Beyond this, Jodie has failed to demonstrate prejudice. The proposed

rebuttal testimony from the radiologists indicating that Dr. Burgess was listed next

to a "cc" notation on the draft reports would not have impacted the verdict for two

apparent reasons.

[¶19.] First, Jodie's counsel acknowledged that Dr. Burgess' testimony about

not having seen the draft report may well have been accurate, telling the circuit

court, "quite honestly, [Dr. Burgess'] testimony may be truthful that he hasn't seen

it." As indicated, the final reports contained in Jodie's medical records produced by

---

5. This case differs significantly from the fact-bound circumstances in *Sorensen v. Harbor Bar, LLC*, 2015 S.D. 88, ¶ 33, 871 N.W.2d 851. There, we held that a workers' compensation claimant's pretrial knowledge of a defense expert's testimony did not preclude rebuttal testimony, but we did so because the rebuttal testimony did not augment the claimant's compensability case. Rather, the rebuttal testimony disputed the employer's defense. Here, however, Jodie intended to use the draft reports to directly support her claim that Dr. Burgess' negligence prevented her from knowing that the size of the mediastinal mass had increased.

RCMC and admitted at trial did *not* contain a notation showing that Dr. Burgess had received a copy. As we understand the proffer, the two radiologists were not going to testify that Dr. Burgess had, in fact, received a copy of the draft reports or reviewed them—only that the draft reports indicated he had received copies.[6]

[¶20.] Second, Jodie's case against Dr. Burgess focused principally on her allegation that he should have advised her of the mediastinal mass at the outset, when he first noticed it in 2008. The fact that it was still present and had increased in size related more to the claims against Drs. Welsh and Rafferty, both of whom prevailed at trial.

[¶21.] Under the circumstances, we see no abuse of discretion or prejudice associated with the circuit court's decision to deny Jodie's request to allow the rebuttal testimony.

### *Denial of Jodie's Proposed Jury Instruction*

[¶22.] "A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard." *Johnson*, 2020 S.D. 39, ¶ 28, 946 N.W.2d at 9 (quoting *Bertelsen v. Allstate Ins. Co.*, 2011 S.D. 13, ¶ 26, 796 N.W.2d 685, 695). However, courts do not have discretion to give incorrect instructions to the jury:

> "[T]o do so constitutes reversible error if it is shown not only
> that the instructions were erroneous, but also that they were

---

6. Although Jodie's counsel proffered that the radiologists could provide a foundation for the draft reports, there was no indication they would have been able to distinguish between a draft report and a final report, or explain how the former becomes the latter.

prejudicial." Prejudice occurs "when[,] in all probability[,] [the instructions] produced some effect upon the verdict and were harmful to the substantial rights of a party."

*Mealy v. Prins*, 2019 S.D. 57, ¶ 30, 934 N.W.2d 891, 900 (alteration in original) (quoting *Vetter v. Cam Wal Elec. Coop., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615). "To determine whether the court erred in instructing the jury, we apply a de novo standard of review and 'construe jury instructions as a whole to learn if they provided a full and correct statement of the law.'" *Tammen v. K & K Mgmt. Servs., Inc./Fryn' Pan*, 2019 S.D. 29, ¶ 13, 929 N.W.2d 96, 99 (quoting *Vetter*, 2006 S.D. 21, ¶ 10, 711 N.W.2d at 615).

[¶23.] Jodie contends that the circuit court's decision to truncate her proposed jury instruction regarding the law of agency resulted in an incomplete, or incorrect, statement of the law. Under SDCL 59-6-9:

> [A] principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as part of the transaction of such business; and for his willful omission to fulfill the obligation of the principal.

[¶24.] Jodie's proposed agency jury instruction read:

> Rapid Medical Center, LLP, is liable to third persons, like Plaintiff, for the negligence of its employee(s) in carrying out medical services to and for Plaintiff's medical diagnosis, treatment(s) and failure to inform, including wrongful acts committed by such employee(s) in and as part of the conduct of such medical services; and for the employee(s) willful omission(s) to fulfill the obligation(s) of Defendant Rapid Medical Center, LLP.

[¶25.] The Appellees objected, stating that the last portion of the instruction only served to restate Jodie's negligence claim. The circuit court agreed, and provided the following instruction to the jury:

> Rapid City Medical Center, LLP, is liable to third persons, like Plaintiff, for the negligence of its employee(s) in carrying out medical services to and for Plaintiff's medical diagnosis and treatment(s).

[¶26.] Missing from this instruction is the portion taken from Jodie's proposed instruction concerning the failure to inform and advising the jury that RCMC is also liable for "wrongful acts committed by such agent in and as part of the transaction of such business; and for his willful omission to fulfill the obligation of the principal." However, we are not convinced this language was necessary in this case to adequately state the law to the jury.

[¶27.] Under the circumstances of this case, Jodie's claim that Drs. Burgess, Welsh, and Rafferty had failed to inform her of the mediastinal mass was inextricably intertwined with her treatment. The circuit court's decision to omit this "failure to inform" phrase did not overlook Jodie's evidence or deprive her of the argument that RCMC was liable because its physicians were negligent for not advising her of the mass.

[¶28.] We are also not persuaded by Jodie's claim that the circuit court abused its discretion by not instructing the jury that RCMC was liable for its agents "willful omission[s] to fulfill [RCMC's] obligations." Jodie sought to impose vicarious liability upon RCMC based on its doctors' alleged negligence. It was not tried on the claim that their conduct included "willful omission[s] to fulfill the obligation" of RCMC.

[¶29.] Jodie contends the circuit court's agency instruction failed to account for a separate claim against RCMC. This claim is based upon the theory that Dr. Burgess referred her to RCMC's urgent care clinics where she was seen by other

providers, including non-party providers, who, she alleges, failed to thoroughly review her medical records and learn of her mediastinal mass. To support the claim, Jodie cites the decision of the Ohio Supreme Court in *Clark v. Southview Hosp. & Fam. Health Ctr.*, 628 N.E.2d 46 (Ohio 1994). However, *Clark* involved a distinctly different agency issue, and Jodie's reliance upon it is misplaced.

[¶30.]       In *Clark*, a divided court used the doctrine of agency-by-estoppel to extend the principles of respondeat superior from the employer/employee relationship to the employer/independent contractor relationship. 628 N.E.2d at 54. Here, there are no independent contractors, and although RCMC denied that other providers who had not been individually sued were appropriately part of the case, it did not dispute their status as agents.

[¶31.]       Beyond this, Jodie's agency argument is ultimately unsustainable because it does not state a new theory of negligence as much as it reprises the unsuccessful allegations of negligence against Drs. Burgess, Welsh, and Rafferty. Jodie claimed that Dr. Burgess initially breached the standard of care by not advising her of the mediastinal mass and that Drs. Welsh and Rafferty were similarly negligent for not reviewing the prior CT scan. This is precisely the same theory Jodie states with respect to other RCMC providers who were not named as defendants.[7] However, Jodie has not demonstrated how she would have been able

---

7.    Jody alleged at trial that three other RCMC providers, who were not named in the suit, provided negligent care to her because, like Drs. Welsh and Raffety, they also treated her without reviewing her medical records to learn of the mediastinal mass. For reasons not directly raised by the issues here, the circuit court allowed Jodie to discuss the alleged negligence of one of these non-party providers, but not all three. Though not identified as an

(continued . . .)

to use these same negligence allegations to extend vicarious liability to RCMC through its unnamed agents when she was unable to do so through the named doctors.[8]

[¶32.]     Further, even if the circuit court abused its discretion, we are unable to perceive prejudice because the general verdict precludes meaningful review. In order to understand the effect of the error Jodie alleges, the verdict form should have contained special interrogatories that isolated the specific basis for the jury's determination of no liability from among the necessary elements.[9] "Without special interrogatories detailing the basis for the jury's determination of no liability, we are unable to discern the reason for its verdict, which could have rested on multiple permissible bases." *Sedlacek v. Prussman Contracting, Inc.*, 2020 S.D. 18, ¶ 22, 941 N.W.2d 819, 824.

[¶33.]     Here, the jury's general defense verdict may have been based on several permissible grounds having nothing to do with the law of agency. For

---

(. . . continued)

    issue on appeal, Jodie claims this ruling "arbitrarily limited" her "agency evidence." However, because there was no detectible variation in the theory of negligence among any of these providers, named or unnamed in the action, Jodie's argument is not supportable.

8.    The jury was instructed that the three doctors named in the action were RCMC's agents and that "if you find Dr. Welsh, Dr. Rafferty and/or Dr. Burgess liable for any of the plaintiff's claims against them, you must also find defendant Rapid City Medical Center, LLP, liable on the same claims."

9.    Jodie proposed a verdict form for use in the event that the jury returned a verdict for her. She did not propose a verdict form that contemplated a defense verdict. The verdict form used by the jury was consistent with one proposed by the Appellees which simply stated, "We, the jury . . . find for the Defendants."

example, the jury could have determined that the individual doctors did not violate the applicable standard of care. The jury could have also concluded that there was insufficient evidence of causation because Jodie, by her expert's own admission, did not establish when the surgery to remove the mediastinal mass should have occurred in the absence of the alleged malpractice. Under these circumstances, our cases recognize that we cannot assess prejudice, leaving as our only course, recognition of the rule that the circuit court is presumed to have acted correctly. *See State Farm Mut. Auto. Ins. Co. v. Miranda*, 2019 S.D. 47, ¶ 10, 932 N.W.2d 570, 574 (quoting *Reed Constr., Inc. v. S.D. Dep't of Transp.*, 2017 S.D. 63, ¶ 14, 903 N.W.2d 740, 745 ("[I]f a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory.")).

### Conclusion

[¶34.] The circuit court did not abuse its discretion by denying the request to call two rebuttal witnesses in an attempt to lay foundation for medical records not offered during Jodie's case-in-chief. The court also did not abuse its discretion when it limited the agency instruction relative to the claims Jodie raised against the Appellees. We affirm.

[¶35.] JENSEN, Chief Justice, and DEVANEY, Justice, and GILBERTSON, Retired Chief Justice, and MEIERHENRY, Retired Justice, concur.

[¶36.] MEIERHENRY, Retired Justice, sitting for KERN, Justice, disqualified.

[¶37.]      MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.