#30697, #30705-aff in pt & rev in pt-MES
**2025 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LORI A. OLSON, Individually and
as the personal representative of the
ESTATE OF SCOTT D. OLSON,
a deceased person,                                             Plaintiffs and Appellants,

v.

HURON REGIONAL MEDICAL
CENTER, INC., WILLIAM J.
MINER, M.D., and THOMAS MINER,                    Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK T. PARDY
Judge

\* \* \* \*

DANIEL K. BRENDTRO
MARY ELLEN DIRKSEN
BENJAMIN HUMMEL of
Hovland, Rasmus, Brendtro
  & Trzynka, Prof. LLC
Sioux Falls, South Dakota                    Attorneys for plaintiffs and
                                             appellants.


GREGORY J. BERNARD
KIMBERLY PEHRSON of
Thomas Braun Bernard & Burke, LLP
Rapid City, South Dakota                    Attorneys for defendant and
                                            appellee William J. Miner, M.D.

\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 18, 2025
OPINION FILED **07/09/25**

* * * *

MARK W. HAIGH
TYLER W. HAIGH
TYLER A. BRADLEY of
Evans, Haigh & Arndt, LLP
Sioux Falls, South Dakota

Attorneys for defendant and appellee Huron Regional Medical Center and Thomas Miner.

#30697, #30705

SALTER, Justice

[¶1.] A widow, for herself and on behalf of her deceased husband's estate, commenced this action against a hospital, a doctor, and a physician's assistant for several claims relating to her husband's death. After denying the doctor's motion to dismiss for insufficient service of process, the circuit court ultimately granted the defendants' motions to dismiss for failure to prosecute. The widow appeals, challenging the order granting the motion to dismiss. By notice of review, the doctor challenges the court's denial of his motion to dismiss for insufficient service. We reverse in part and affirm in part.

## Factual and Procedural Background

[¶2.] Scott Olson passed away at the Huron Regional Medical Center (HRMC) on January 24, 2020, after experiencing cardiac arrest. At the time of his death, Scott was under the care of physician William Miner, M.D. (Dr. Miner), and Thomas Miner (Mr. Miner) who is a physician's assistant and Dr. Miner's brother. In September 2021, Scott's widow, Lori Olson, brought this action individually and as the personal representative of Scott's estate against HRMC, Dr. Miner, and Mr. Miner (collectively, the defendants).

[¶3.] The complaint alleged negligence, wrongful death, and loss of consortium. The complaint also raised claims of intentional infliction of emotional distress, civil conspiracy, and fraudulent concealment. These latter claims were related to Lori's allegations that Dr. Miner and Mr. Miner sought to prevent Lori from learning of their negligence and what she described as the "true cause of Scott's death" by denying authorization for an autopsy.

-1-

[¶4.]      Lori commenced the action as to HRMC and Mr. Miner by service of a summons and complaint on September 15, 2021. In the time following Scott's death, Dr. Miner had relocated to Rapid City and was working at Monument Health Rapid City Hospital. Lori's attorneys delivered a summons and complaint to the Pennington County Sheriff on September 20 with instructions to serve Dr. Miner.

[¶5.]      The following day, September 21, a Pennington County sheriff's deputy went to Monument Health, but instead of personally serving Dr. Miner, the deputy left the summons and complaint with Marlin Klingspor, a paralegal in the offices of Monument Health's general counsel. Klingspor delivered the summons and complaint to Paula McInerney-Hall, associate general counsel for Monument Health, who notified Dr. Miner. He came to her office the next day, September 22, where he claimed the summons and complaint from Klingspor. Significantly, the deputy completed the proof of service document stating he had "served" Dr. Miner at Monument Health.

[¶6.]      Among the affirmative defenses listed in Dr. Miner's answer is the general allegation that "the Court lacks personal and subject matter jurisdiction in this matter." The topic of insufficient service is also briefly referenced in Dr. Miner's January 14, 2022 answer to one of Lori's interrogatories inquiring as to "the factual basis for each affirmative defense[.]" In relevant part, Dr. Miner stated the following:

> With regard to other affirmative defenses, discovery in this case continues. This response will be seasonably updated as evidence is gathered, witnesses are selected, and exhibits are compiled. Dr. Miner was not served with process.

[¶7.] On February 10, 2022, after SDCL 15-2-14.1's two-year statute of repose had ran, Dr. Miner moved for dismissal claiming that Lori had "failed to serve him with process[.]" Lori resisted the motion and advanced four separate arguments: (1) Dr. Miner had been served by an "elector" under SDCL 15-6-4(c) through the efforts of Klingspor, the paralegal at Monument Health; (2) Dr. Miner waived his right to challenge service by participating in the litigation; (3) Dr. Miner was either estopped from challenging service or Lori was entitled to equitable tolling; and (4) the intentional torts alleged in the complaint were not subject to the two-year statute of repose and should not, in any event, be dismissed. Lori arranged to have Dr. Miner personally served with the summons and complaint at his home on February 25.

[¶8.] Following Dr. Miner's motion to dismiss, the parties conducted discovery, including depositions of the Pennington County deputy charged with serving Dr. Miner, Monument Health paralegal Marlin Klingspor, and Monument Health associate general counsel Paula McInerny-Hall. Klingspor and McInerny-Hall also submitted affidavits.

[¶9.] At an August 2022 hearing, the circuit court denied Dr. Miner's motion to dismiss. In its oral decision and in a subsequent written order, the court accepted each of Lori's four arguments as the multiple bases for its decision.[1]

[¶10.] Also significant to this appeal is the type and frequency of activity related to the prosecution of the case after the August 2022 hearing on Dr. Miner's

---

1. The case was originally assigned to the Honorable Kent Shelton who decided Dr. Miner's motion to dismiss for lack of service. Judge Shelton later recused himself, and the case was assigned to the Honorable Patrick Pardy.

motion to dismiss. The context for some of the parties' contact during this time relates to the defendants' efforts to compile a complete set of Scott's medical records which could then be numbered and used by all parties. The following chronology of events appears to be undisputed:

- September 21, 2022: Lori answers HRMC and Mr. Miner's 11/24/2021 written discovery requests and includes an authorization for release of Scott's medical records.

- September 21, 2022: Lori answers Dr. Miner's 12/29/2021 interrogatories.

- September 2022: Lori provides Scott's records from HRMC, Avera Heart Hospital, North Central Heart Hospital, Tschetter & Hohm Clinic, Orthopedic Institute, Avera McKennan, and AMG Nephrology; counsel for HRMC and Mr. Miner request authorizations from Lori's counsel to ensure all medical records had been provided.

- September 28, 2022 – December 6, 2022: Multiple emails are exchanged between parties.

- October 17, 2022: Lori's counsel and Dr. Miner's counsel communicate.

- December 6, 2022: HRMC and Mr. Miner obtain a completed authorization for release of health information from Lori; HRMC and Mr. Miner, through their counsel, initiate obtaining medical records.

- January 3, 2023: Dr. Miner requests an updated medical release from Lori through staff for the respective counsel.

- January 6, 2023: Lori updates medical release authorizations to Dr. Miner through staff for the respective counsel.

- January 13, 2023: Dr. Miner continues to gather medical records.

- February 2023: HRMC and Mr. Miner request, and Lori provides, letters of Personal Representative.

- February 10-13, 2023: Dr. Miner continues efforts to gather medical records from individual providers.

- March 24 or 28, 2023: At the request of one of Scott's medical providers, paralegals for counsel of both HRMC and Mr. Miner as well as Lori have a brief email exchange in which the paralegal for Lori's counsel provides a copy of Scott's death certificate to the paralegal for HRMC and Mr. Miner.

- March 31, 2023: Dr. Miner continues to gather medical records.

- April 2023: Lori's counsel speaks over phone with defendants' counsel relating to Lori's search for medical experts; the conversation is called a side-bar conversation because it apparently occurred during a call involving an unrelated case.

- April 25, 2023: Dr. Miner continues to gather medical records from individual providers.

- May 5, 2023: Lori identifies two medical experts.

- June 2023: Lori's medical experts provide a verbal report to her counsel.

- Fall 2023: Lori receives a report from her medical experts.

- January 8, 2024: Lori's counsel requests a complete set of medical records.

[¶11.] On January 8, 2024, Dr. Miner moved to dismiss for lack of prosecution under SDCL 15-11-11 and SDCL 15-6-41(b) (Rule 41(b)). HRMC and Mr. Miner subsequently joined the motion. In his motion, Dr. Miner alleged the case had been inactive for more than twelve months in violation of SDCL 15-11-11, or, that Lori had failed to prosecute it under Rule 41(b). Dr. Miner, through counsel, submitted an affidavit contending "no other activity has occurred in this file since January 6, 2023."

[¶12.]    In response, Lori asserted that formal and informal discovery efforts constituted "record activity," and she recounted the activities both sides had undertaken during the seventeen-month period since the circuit court's August 2022 hearing in an affidavit.  Lori also underscored the severe impact of a dismissal and asked the court to "exercise its discretion in favor of pursuing this matter on its merits."

[¶13.]    Following a hearing, the circuit court granted the defendants' motions to dismiss under both SDCL 15-11-11 and Rule 41(b) in a March 2024 memorandum opinion.  Under SDCL 15-11-11, the court construed "activity" narrowly as communication between parties that "mov[es] the case towards trial."  Noting that Lori last communicated with Dr. Miner through counsel on January 6, 2023, one year before the January 8, 2024 motion to dismiss, the court determined that "[t]he period of inactivity . . . clearly exceed[ed] the twelve-month statutory minimum[.]"  With respect to HRMC and Mr. Miner, the court noted communication between the parties within twelve months of the motion.  But in the court's view, this communication did not qualify as "activity" because it "was not moving the case towards trial."  The court further concluded that Lori's work with experts was insufficient to qualify as "activity."

[¶14.]    As for good cause, the court found that the period of inactivity Lori spent waiting for the defendants to provide medical records could not be excused because she neither "avail[ed] [her]self to the rules of civil procedure" nor "engaged in communication with opposing counsel" to remedy what the court described as a "discovery dispute."  Notably, in its analysis of SDCL 15-11-11, the court included

language describing an "unreasonable, unexplained delay," which is the standard from Rule 41(b), not SDCL 15-11-11.

[¶15.]     The circuit court returned to the "unreasonable and unexplained" standard when it also granted the motion to dismiss under Rule 41(b).  The court found the defendants were prejudiced by the delay in communications in the sense that it prolonged "the financial and emotional difficulties that come with a lawsuit[.]"  Moreover, the court determined Lori was "responsible for the delay" because she "did nothing to move the case forward," and, as a result, it found "that the delay was unreasonable and unexplained."

[¶16.]     After an unsuccessful motion for reconsideration, Lori appealed the circuit court's decision to grant the defendants' motions to dismiss for lack of prosecution.  In Lori's view, the court erred in its application of both SDCL 15-11-11 and Rule 41(b).  By notice of review, Dr. Miner contends the court erred in denying his motion to dismiss for insufficient service.

## Analysis and Decision

### *Standard of Review*

[¶17.]     We apply three distinct standards of review for dismissal of a civil case for failure to prosecute under either SDCL 15-11-11 or Rule 41(b).  For the first two, "we review the 'circuit court's findings of fact under the clearly erroneous standard, while we apply the de novo standard when reviewing its conclusions of law.'" *LaPlante v. GGNSC Madison, S.D., LLC*, 2020 S.D. 13, ¶ 11, 941 N.W.2d 223, 227 (quoting *Eischen v. Wayne Twp.*, 2008 S.D. 2, ¶ 10, 744 N.W.2d 788, 794).

[¶18.]     And for "the circuit court's ultimate decision to dismiss 'a claim for failure to prosecute[,]'" we apply an abuse of discretion standard. *Id.* (quoting *Eischen*, 2008 S.D. 2, ¶ 10, 744 N.W.2d at 794). "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Frye-Byington v. Rapid City Med. Ctr., LLP*, 2021 S.D. 3, ¶ 10, 954 N.W.2d 314, 317 (quoting *Johnson v. United Parcel Serv., Inc.*, 2020 S.D. 39, ¶ 27, 946 N.W.2d 1, 8). Of course, "an error of law is never within the range of permissible choices and necessarily constitutes an abuse of discretion." *Field v. Field*, 2020 S.D. 51, ¶ 15, 949 N.W.2d 221, 224 (citing *Lewis v. Sanford Med. Ctr.*, 2013 S.D. 80, ¶ 27, 840 N.W.2d 662, 668).

[¶19.]     Further, the standard is violated when the circuit court "clearly errs in weighing the [relevant] factors." *Rothluebbers v. Obee*, 2003 S.D. 95, ¶ 5, 668 N.W.2d 313, 316 (quoting *EFCO Corp. v. Aluma Systems USA, Inc.*, 268 F.3d 601, 603 (8th Cir. 2001)). This includes instances where the court "fails to consider a relevant factor that should have received significant weight, [or] gives significant weight to an improper or irrelevant factor[.]" *United States v. Struzik*, 572 F.3d 484, 488 (8th Cir. 2009) (quoting *United States v. Moore*, 565 F.3d 435, 438 (8th Cir. 2009)); *see also State v. Mitchell*, 2021 S.D. 46, ¶ 39, 963 N.W.2d 326, 335 (holding a circuit court's decision was "outside the range of permissible choices" because it did not consider a relevant factor).

*Motion to Dismiss for Failure to Prosecute*

[¶20.]     We have stated an institutional preference to resolving cases on their merits, explaining in the context of relief from a default judgment that "cases should ordinarily be decided on their merits, and elementary fairness demands of courts a tolerant exercise of discretion in evaluating excusable neglect." *Upper Plains Contracting Inc. v. Pepsi Americas*, 2003 S.D. 3, ¶ 22, 656 N.W.2d 323, 330 (cleaned up).  Nevertheless, circuit courts do possess authority under both SDCL 15-11-11 and Rule 41(b) to dismiss civil actions for want of prosecution.  But despite the similar subject matter and overlapping considerations, the two rules are distinct.  In his dissent in *Eischen*, Justice Konenkamp observed "we have never distinguished which rule applies in different circumstances[,]" nor developed a "clear guide on how and when each should be used." *Eischen*, 2008 S.D. 2, ¶ 38, 744 N.W.2d at 800 (Konenkamp, J., dissenting).

[¶21.]     We have, however, repeatedly emphasized that SDCL 15-11-11 is "meant to operate as a clerical tool" that helps "a court to clear its docket after a quota of inactivity is met." *Rotenberger v. Burghduff*, 2007 S.D. 7, ¶ 16, 727 N.W.2d 291, 295.  Since it is merely a court management tool, "a dismissal under SDCL 15-11-11 is without prejudice." *Id.* ¶ 14.

[¶22.]     By contrast, Rule 41(b) is "a tool for sanctioning a party for delay or disobedience in the processing of a case." *Eischen*, 2008 S.D. 2, ¶ 39, 744 N.W.2d at 800 (Konenkamp, J., dissenting).  Unlike dismissals under SDCL 15-11-11, "the dismissal [under Rule 41(b)] may be with or without prejudice." *Id.* (citing SDCL 15-6-41(b)).  Because dismissal with prejudice is such "an extreme remedy," our

cases emphasize that it should only be used "when there is an unreasonable and unexplained delay." *Dakota Cheese, Inc. v. Taylor*, 525 N.W.2d 713, 715 (S.D. 1995) (citations omitted). Further, under Rule 41(b), "the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal." *Id.* at 716 (citations omitted).

### SDCL 15-11-11

[¶23.] The text of SDCL 15-11-11 provides as follows:

> The court may dismiss any civil case for want of prosecution upon written notice to counsel of record where the record reflects that there has been no activity for one year, unless good cause is shown to the contrary. The term "record," for purposes of establishing good cause, shall include, but not by way of limitation, settlement negotiations between the parties or their counsel, formal or informal discovery proceedings, the exchange of any pleadings, and written evidence of agreements between the parties or counsel which justifiably result in delays in prosecution.

[¶24.] We have previously interpreted this text as establishing a two-prong test: "Before a circuit court may exercise its discretion and dismiss a case for want of prosecution there must be a) no activity for one year, and, b) no showing of good cause which excuses the inactivity." *Annett v. Am. Honda Motor Co.*, 1996 S.D. 58, ¶ 14, 548 N.W.2d 798, 803 (citing SDCL 15-11-11). Unfortunately, the second sentence of SDCL 15-11-11 appears to mix the concepts of record inactivity and just cause by stating, "The term 'record,' for purposes of establishing good cause shall include . . . ." Perhaps this has contributed, at least in part, to some confusion regarding the record-inactivity requirement.

[¶25.] In *White Eagle v. City of Fort Pierre*, we observed that prior to a 1998 amendment that added the second sentence to SDCL 15-11-11, "we rejected

'informal discovery and settlement negotiations' as a form of 'activity[.]'"[2] 2002 S.D. 68, ¶ 7, 647 N.W.2d 716, 719 (quoting *Annett*, 1996 S.D. 58, ¶ 18, 548 N.W.2d at 803). However, we reconciled the amended language and our prior decisions by focusing on the need for the activity to be "verifiable *in the record before us*[.]" *Id.* ¶ 8 (emphasis added).

[¶26.]     Indeed, we recently clarified that SDCL 15-11-11 does not require activity in the actual clerk's record. In *LaPlante*, we relied upon our SDCL 15-11-11 holdings to interpret a similar rule that applies to administrative workers' compensation cases:

> "Our focus has always been on whether *proof* of activity was presented. The activity alleged must be verifiable in the record before us, regardless of whether the activity was in the form of formal motions or informal discovery." Therefore, even if the events occurring in a case are not simultaneously documented in the official case file, a record of the activity can be made after the fact in response to a motion to dismiss. In discussing a plaintiff's obligations under SDCL 15-11-11, we have stated a plaintiff has the "duty to carry [the] case forward and to ensure verifiable activity existed to keep the case afloat."

2020 S.D. 13, ¶ 18, 941 N.W.2d at 229 (alteration in original) (internal citations omitted) (quoting *White Eagle*, 2002 S.D. 68, ¶¶ 8, 11, 647 N.W.2d at 719–20).

[¶27.]     Here, however, the record reveals verifiable activity between Lori's counsel and counsel for the defendants in the year-long period leading up to defendants' January 8, 2024 motion to dismiss. The effort among counsel, through their offices, to assemble a complete set of medical records was verifiable and

---

2.     In *White Eagle*, we incorrectly stated "the Legislature added this language[.]" 2002 S.D. 68, ¶ 6, 647 N.W.2d at 719. The Legislature did not amend SDCL 15-11-11; it is a court rule that we amended following a rules hearing on February 20, 1998.

undisputed activity as determined by the circuit court. Also undisputed is the assertion by Lori's counsel that HRMC had taken it upon itself to assemble a complete set of Scott's medical records that would then be shared among the parties and presumably marked with a universal set of Bates numbers. The effort was facilitated by communication between staff working on behalf of counsel for several months following January 6, 2023.

[¶28.] In addition, in February 2023, at defendants' request, Lori provided letters of Personal Representative. In late March 2023, paralegals in counsels' offices communicated via email regarding Scott's death certificate which was requested by HRMC and promptly furnished by paralegals for Lori's counsel.

[¶29.] The circuit court did not view these contacts between law offices as activity principally because Lori was not actively gathering the records to which she already had access. But the issue here is not *access* to the documents; it is the verifiable activity that was occurring to move the case forward. Lori was working with defendants as they sought to develop a comprehensive and complete set of all Scott's medical records which would then be shared among the parties, numbered for a common evidentiary reference point, and used throughout the litigation.[3]

---

3. The circuit court stated that the "Defendants need only meet Plaintiff step by step[,]" which is a reference to our decisions holding that "[p]laintiffs bear the duty to advance their cases, while defendants need only meet plaintiffs' actions step by step." *LaPlante*, 2020 S.D. 13, ¶ 15, 941 N.W.2d at 228 (alteration in original) (quoting *Moore v. Michelin Tire Co., Inc.*, 1999 S.D. 152, ¶ 49, 603 N.W.2d 513, 526). However, this principle does not mean that efforts by the defense, taken in concert with a plaintiff, cannot constitute verifiable activity to move the case forward.

[¶30.]     Also, in April 2023, Lori's counsel spoke to counsel for HRMC in a telephone conversation concerning her search for medical experts. This is direct contact between attorneys involved in the case and easily constitutes verifiable record activity during the year prior to the defendants' motion to dismiss. Lori's counsel was in direct communication with counsel for HRMC and Mr. Miner to exchange information, and this phone call led to further efforts to move the case forward.

[¶31.]     Because there was verifiable record activity within the year prior to the defendants' motion for dismissal, the defendants have not satisfied the inactivity element of SDCL 15-11-11. It is unnecessary, therefore, to address good cause. Accordingly, we conclude the circuit court's decision granting the defendants' motion to dismiss for failure to prosecute under SDCL 15-11-11 constitutes "a choice outside the range of permissible choices[.]" *Frye-Byington*, 2021 S.D. 3, ¶ 10, 954 N.W.2d at 317 (citation omitted).

### Rule 41(b)

[¶32.]     The relevant portion of Rule 41(b) provides:

> For failure of the plaintiff to prosecute or to comply with this chapter or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this section . . . operates as an adjudication upon the merits.

SDCL 15-6-41(b).

[¶33.]     This rule of civil procedure is distinct from SDCL 15-11-11 and requires a different legal analysis. Unlike SDCL 15-11-11, dismissal is not based on a particular period of inactivity. Instead, dismissal under Rule 41(b) depends upon

whether a plaintiff's conduct "rise[s] to the level of egregiousness which should preclude [the case] from proceeding[.]" *Swenson v. Sanborn Cnty. Farmers Union Oil Co.*, 1999 S.D. 61, ¶ 22, 594 N.W.2d 339, 345. Rule 41(b), by its nature, permits a court to be more qualitative in its analysis of the motion to dismiss.

[¶34.]     As indicated above, however, these rules are set against the backdrop of our preference to adjudicate cases on their merits, where possible. Therefore, "a dismissal of an action for failure to prosecute . . . should be used only when there is an unreasonable and unexplained delay." *Dakota Cheese*, 525 N.W.2d at 715. "An unreasonable and unexplained delay has been defined as an omission to do something 'which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights.'" *Id.* at 715–16 (citation omitted).

[¶35.]     We found egregiousness in *Jenco, Inc. v. United Fire Group*, 2003 S.D. 79, 666 N.W.2d 763, where there was no activity in the case for thirty months, no discovery or settlement negotiations, no agreements between opposing counsel to justify the delay, no explanation for the plaintiff's failure to obtain substitute counsel, and actual prejudice to the defendant in the form of the disappearance of a key witness during the period of delay. 2003 S.D. 79, ¶¶ 12–19, 666 N.W.2d at 766–68. We also found egregious conduct in *Eischen* when "there were only two other acts [initiated by plaintiffs] during the ensuing three years and nine months[.]" *Eischen*, 2008 S.D. 2, ¶ 20, 744 N.W.2d at 797. Additionally, in *Eischen*, plaintiff's counsel "repeatedly caused the postponement of hearings or failed to deliver responsive pleadings in a timely manner as agreed." *Id.*

[¶36.]    But nothing in this record rises to the level of egregiousness demonstrated by our previous cases. Lori's counsel candidly admitted they could have done better at communicating with opposing counsel, but the fact remains the case was moving forward. *See Swenson*, 1999 S.D. 61, ¶ 22, 594 N.W.2d at 345 (holding that though the plaintiffs "could have been more persistent in their pursuit of trial," their conduct was not so egregious that the case should be dismissed).

[¶37.]    Indeed, there are no lengthy periods of unexplained delay. Lori and her counsel articulated their understanding that defendants were actively engaged in preparing medical records to share among the parties. Additionally, her actions of seeking out medical expert testimony and soliciting the experts' opinions is something "the party might do and might reasonably be expected to do" toward establishing her wrongful death claim. *Dakota Cheese*, 525 N.W.2d at 715–16 (citation omitted). And the communication with opposing counsel in April 2023 and the subsequent coordination among opposing counsels' offices are sharply at odds with the facts of *Dakota Cheese*, in which "any communication with the court or [defendants]" was "[n]otably absent." *Id.* at 717. Lori's actions were reasonable, responsive to defendants' requests, and did not prejudice the defendants. Even though the circuit court made a finding that defendants were prejudiced by the delay, Dr. Miner conceded he was "not impeded or prejudiced" in defending himself.

[¶38.]    We are left with the strong sense that the passage of time was a predominant factor in the circuit court's determination, along with its view that defendants, and not Lori, were more directly engaged in obtaining and compiling medical records. Neither of these reasons justifies the court's decision to dismiss

Lori's complaint, as we have explained. It may be that our decisions have not sufficiently emphasized the strong aversion to the sanction of dismissal and, more importantly perhaps, the utility of other, less drastic, means of encouraging promptitude before outright dismissal.

[¶39.] Several members of this Court have previously suggested that under Rule 41(b), a court should be able to consider "some other less extreme sanction" than dismissal with prejudice. *Eischen*, 2008 S.D. 2, ¶ 37, 744 N.W.2d at 800 (Konenkamp, J., dissenting).[4] Federal courts applying their corresponding version of Rule 41(b) have traditionally considered several factors to "determine whether dismissal on the merits is warranted." *Id.* ¶ 41, 744 N.W.2d at 801. In fact, every federal circuit has adopted some type of factor balancing test "to ensure that meritorious cases are not unfairly or unnecessarily thrown out of court."[5] *Id.*

---

4. Justice Meierhenry joined Justice Konenkamp's dissent in *Eischen*. Justice Sabers concurred specially, supplying the third vote for the majority, but he stated that he "generally agree[d] with the spirit of [Justice Konenkamp's] dissent[.]" *Eischen*, 2008 S.D. 2, ¶ 33, 744 N.W.2d 799 (Sabers, J., concurring specially).

5. Several surrounding states have also adopted such a balancing approach before deciding to dismiss a case with prejudice. *See, e.g., Schultz v. State*, 992 N.W.2d 779, 785–87 (Neb. Ct. App. 2023) (reasoning that a court's need to manage its docket, the desirousness of deciding cases on their merits, and the availability of less drastic sanctions are all relevant before dismissing a case); *2049 Grp. Ltd. v. Galt Sand Co.*, 526 N.W.2d 876, 878 (Iowa Ct. App. 1994) (holding dismissal of a case without considering the array of lesser sanctions available amounted to abuse of discretion); *Zepeda v. Cool*, 963 N.W.2d 282, 285 (N.D. 2021) (requiring courts to balance several factors against "the great reluctance to impose the harsh remedy of dismissal" in order to advance the goal of deciding cases on their merits).

[¶40.]     In his *Eischen* dissent, Justice Konenkamp listed several possible factors which could guide the courts in the exercise of their discretion, in addition to considering the presence of an unreasonable and unexplained delay in prosecution:

> (1) [W]hether the plaintiff had received notice that further delays would result in dismissal; (2) whether the judge adequately assessed the efficacy of lesser sanctions before dismissal was ordered; (3) whether the conduct of the party or the attorney was willful or in bad faith; (4) the degree of actual prejudice to the opposing side or the substantial likelihood of future prejudice in the event of further delay; and (5) the merits of the plaintiff's claim for relief.

*Id.* ¶ 42..[6]

[¶41.]     The factor approach has its advantages, though no factor should be preeminent; nor should a list of factors be viewed as a talismanic formulation of elements.  But, in many ways, these factors are eminently practical.  For example, it is entirely reasonable in most instances for a court to warn plaintiffs that further unnecessary delay could result in the dismissal of their complaint.

[¶42.]     Together, the five non-exclusive factors listed in *Eischen* go a long way toward furthering the public policy goal of resolving cases on their merits.  The factors are adaptable and easy for courts to apply as they consider Rule 41(b) motions.  Had even the first four been applied to this case, the undisputed facts point decidedly against granting the defendants' motion to dismiss under Rule 41(b).

---

6.     In creating this list of factors, Justice Konenkamp relied on the following cases: *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193–94 (2d Cir. 1999); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984); *Harding v. Fed. Reserve Bank of N.Y.*, 707 F.2d 46, 50 (2d Cir. 1983).

[¶43.] First, Lori's counsel was not notified their delays may result in dismissal with prejudice. Second, the circuit court did not consider a less serious sanction before ordering dismissal.

[¶44.] Third, there is no allegation that either Lori or her attorney acted in bad faith. To the contrary, Lori's counsel was actively engaged in preparing her case by seeking out medical expert testimony. Her counsel's delay in prosecuting the case stems from his understanding that defendants were preparing a set of Bates-marked medical records.

[¶45.] And fourth, despite the court's emphasis on prejudice, there is no indication how the defendants were prejudiced. In finding the delay prejudiced the defendants, the court stated that "enduring the financial and emotional difficulties that come with a lawsuit is prejudice." But this type of burden exists as an immutable consequence for all litigation defendants. There is no allegation that the elapsed time prior to the defendants' motion to dismiss compromised their defenses in some way, such as through the destruction of evidence or the loss of witness testimony.

[¶46.] Under the circumstances, we conclude the circuit court abused its discretion by granting defendants' motion to dismiss under Rule 41(b). The court gave too much weight to a temporal delay in activity and did not consider other efforts that were ongoing and moving the case forward.

[¶47.] Because neither SDCL 15-11-11 nor Rule 41(b) support the circuit court's dismissal, we reverse its decision granting the defendants' motion to dismiss for failure to prosecute and turn now to Dr. Miner's notice of review issue.

***Notice of Review and Insufficient Service of Process***[7]

[¶48.]        The plaintiff bears the burden "to establish a prima facie case that the service [on defendant] was proper." *R.B.O. v. Congregation of the Priests of the Sacred Heart, Inc.*, 2011 S.D. 87, ¶ 7, 806 N.W.2d 907, 910 (quoting *Grajczyk v. Tasca*, 2006 S.D. 55, ¶ 22, 717 N.W.2d 624, 631). "We review a circuit court's determination regarding whether a plaintiff presented a prima facie case of sufficient service de novo," and we give "no deference to the circuit court's legal conclusions." *Id.* (citing *Grajczyk*, 2006 S.D. 55, ¶ 22, 717 N.W.2d at 631). If service of process is invalid, then "the trial court had no jurisdiction to hear the case" and the action is "properly dismissed." *Lekanidis v. Bendetti*, 2000 S.D. 86, ¶ 33, 613 N.W.2d 542, 549.

[¶49.]        When serving process upon a defendant who is not a business entity, or public corporation, a minor, or other listed category under SDCL 15-6-4(d), service must be made "[i]n all other cases, to the defendant personally[.]" SDCL 15-6-4(d).[8] On September 21, 2021, a Pennington County sheriff's deputy delivered a summons

---

7.    The question of the sufficiency of service upon Dr. Miner impacts the court's personal jurisdiction over him, and could, for this reason, be viewed as a threshold issue, at least as it relates to him. We have, however, elected to address the failure to prosecute issues relating to all defendants first, and given our disposition of the issues, we perceive no consequence to the way the issues have been ordered.

8.    In his brief, Dr. Miner correctly asserts that giving the summons and complaint to Klingspor was "not valid substitute service." We agree but note that the point does not appear to be controverted. Because service of process occurred at Dr. Miner's workplace—and not at a residence—the substituted service method is not implicated here. *See* SDCL 15-6-4(e) ("If the defendant cannot be found conveniently, service may be made by leaving a copy at the defendant's *dwelling* with someone over the age of fourteen years who resides there." (Emphasis added)).

and complaint intended for Dr. Miner to Marlin Klingspor, a paralegal in the offices of General Counsel for Monument Health. Dr. Miner retrieved the documents the following day from Klingspor.

[¶50.] The provisions of SDCL 15-6-4(c) provide, in part, "[t]he summons may be served by the sheriff or . . . by any other person not a party to the action who at the time of making such service is an elector of any state." SDCL 15-6-4(c). Further, "[t]he service shall be made and the summons returned with proof of the service, with all reasonable diligence, to the plaintiff's attorney, if any, otherwise to the plaintiff." *Id.*

[¶51.] Proof of service must include "the time, place, and manner of such service" and must be made by certificate, affidavit, or written admission. *See* SDCL 15-6-4(g)(1)-(3). We have long held that "[t]he return of service, either by a sheriff or by a disinterested person authorized by law to make it, is prima facie evidence of the material facts" it contains. *Matchett v. Liebig*, 20 S.D. 169, 105 N.W. 170, 171 (1905) (citation omitted). Further, "[t]here is no real distinction between the return of an officer and that of a person authorized to make the service[,]" such as an elector. *Id.* (citation omitted). "A valid return of service establishes a prima facie showing of proper service." *Carmon v. Rose*, 2011 S.D. 18, ¶ 3, 797 N.W.2d 336, 338 (citing *Grajczyk*, 2006 S.D. 55, ¶ 22, 717 N.W.2d at 631).

[¶52.] Lori and her counsel received a return from the Pennington County Sheriff stating that a deputy had personally served Dr. Miner at the hospital on September 21, 2021. This provided prima facie evidence of valid service which Dr. Miner ultimately rebutted through his affidavit submitted as a part of his motion to

dismiss. Here, however, this does not end the inquiry into the *fact* of service. (Emphasis added.) *See Johnson v. Kusel*, 298 N.W.2d 91, 93 (S.D. 1980) ("It is the fact of service, not proof thereof, that gives the court jurisdiction." (citations omitted)).

[¶53.] Indeed, the undisputed evidence established that Dr. Miner was served, though not by the Pennington County deputy. He was, instead, personally served by Marlin Klingspor. She provided the summons and complaint to Dr. Miner, and she is (1) an elector and (2) not a party to the action as required by SDCL 15-6-4(c).

[¶54.] The affidavits and deposition testimony of Dr. Miner, Klingspor, and McInerney-Hall have sufficient detail in their description of the "time, place, and manner of such service" as to establish that Dr. Miner was, in fact, served under the provisions of SDCL 15-6-4(g). In her February 2022 affidavit, McInerney-Hall testified: "On September 22, 2021, Dr. Miner came to my office and retrieved the Summons, Complaint, and Demand Letter." Further, Klingspor testified that she initially received the summons and complaint from the deputy on September 21, and the following afternoon, when Dr. Miner visited the legal office, she opened the door and handed him the summons and complaint. This aligns with Dr. Miner's deposition testimony as well as his February 2022 affidavit in which he acknowledges the time (September 22, 2021), place ("office of Monument Health's legal counsel"), and manner of service (personal service—"[Klingspor] handed [the legal papers] to me through the doorway").

[¶55.] For this reason, the case is much different than *Marshall v. Warwick*, 155 F.3d 1027 (8th Cir. 1998)—the principal authority cited by Dr. Miner. In *Marshall*, a process server gave a summons and complaint to the defendant's mother at the mother's place of employment who then provided them both to the defendant. 155 F.3d at 1029. Dr. Miner argues that *Marshall* institutes a rule against "second-hand service," but the opinion contains no such holding. Instead, the Eighth Circuit Court of Appeals panel, applying South Dakota law, simply affirmed the district court's decision to grant the motion to dismiss because the defendant's mother had "submitted neither an affidavit nor written admission stating the time, place, or manner in which she delivered the summons and complaint to her son." *Id.* at 1032.

[¶56.] Here, of course, there was proof of service, as we have stated, and the circuit court did not err in denying defendants' motion to dismiss for insufficient service.[9]

## Conclusion

[¶57.] The circuit court disregarded record activity within one year of the defendants' motion to dismiss, and nothing in the record rises to the level of egregiousness of our previous cases dealing with Rule 41(b) dismissals. Rather, the delays here were neither unexplained nor unreasonable. We conclude, therefore,

---

9. Having determined the existence of a sufficient basis for affirming the circuit court's decision to deny Dr. Miner's motion to dismiss, it is unnecessary to address his arguments concerning the court's alternate bases, except perhaps to clarify that the court's reliance upon the doctrine of equitable tolling is foreclosed by our decision in *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 21–22, 878 N.W.2d 406, 414.

that the court's dismissal under both SDCL 15-11-11 and Rule 41(b) was not within the range of permissible choices, and we reverse the court's order granting the defendants' motion to dismiss for failure to prosecute.  However, we affirm the court's order denying Dr. Miner's motion to dismiss for insufficient service of process.

[¶58.]        JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.