#31024-r-JMK
**2025 S.D. 70**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

RYAN SCOTT ARROWSMITH,                         Plaintiff and Appellant,

v.

DEVIN MATTHEW ODLE,                         Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN H. FITZGERALD
Judge

\* \* \* \*

ERIN SCHOENBECK BYRE
JAMI J. BISHOP of
Johnson, Janklow & Abdallah, LLP
Sioux Falls, South Dakota                         Attorneys for plaintiff and
                                                                 appellant.


CASSIDY M. STALLEY of
Nooney & Solay, LLP
Rapid City, South Dakota                         Attorneys for defendant and
                                                                 appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 17, 2025
OPINION FILED **12/17/25**

#31024

KERN, Retired Justice

[¶1.]      Plaintiff Ryan Arrowsmith and Defendant Devin Odle were involved in a collision in 2017 at the Sturgis Motorcycle Rally.  Arrowsmith, who was riding his motorcycle at the time of the accident, alleged Odle pulled his vehicle out of a parking lot directly in front of Arrowsmith's motorcycle, causing a collision.  Arrowsmith suffered injuries and sued Odle in 2020 for damages.  After initial discussions, Arrowsmith granted Odle's insurance carrier an open-ended extension to file an answer due to the nature of Arrowsmith's ongoing treatment for his injuries and the uncertainty of his recovery.  The Meade County clerk of courts issued notices of intent to dismiss the case in 2021 and 2022 for inactivity in the file.  Arrowsmith objected to each notice and the court dismissed the notices.  The clerk of courts issued a third notice of intent to dismiss in June 2024, and Arrowsmith again objected.  Odle secured representation in August 2024, whereupon Odle's counsel discussed the case with Arrowsmith's counsel and reaffirmed the open-ended extension agreement.  Two months later, Odle's counsel filed a motion to dismiss for failure to prosecute.  After a hearing on the matter, the circuit court granted Odle's motion to dismiss with prejudice under SDCL 15-11-11 and SDCL 15-6-41(b).  Arrowsmith appeals.  We reverse.

**Factual and Procedural History**

[¶2.]      Plaintiff Ryan Arrowsmith resides in British Colombia, Canada, and was attending the Motorcycle Rally[1] in Sturgis, South Dakota, on August 11, 2017.

---

1.      Held in Sturgis, South Dakota, the Sturgis Motorcycle Rally is an annual event which began in 1938 and has now grown to be one of the oldest and

(continued . . .)

-1-

While riding his motorcycle, he collided with Defendant Devin Odle's vehicle when Odle pulled out of a parking lot directly into Arrowsmith's path. Arrowsmith suffered serious injuries as a result of the crash. Arrowsmith filed a complaint against Odle on July 23, 2020, alleging claims of negligence and negligence per se arising from the accident. Five days later, Odle was personally served with the complaint and summons.

[¶3.]	Shortly after the complaint was filed, on August 20, 2020, Odle's insurance carrier, AAA Insurance, contacted Arrowsmith's counsel to discuss the case. Arrowsmith's counsel advised AAA that his client's recovery was ongoing, and that further surgery was required. Because it was difficult to ascertain the value of Arrowsmith's claim at the time, counsel granted AAA an open extension of time to obtain counsel and file an answer. Arrowsmith's counsel confirmed the extension in an e-mail dated August 20, 2020. The purpose of this extension was presumably to allow for "maximum recovery information" before resuming litigation, as Arrowsmith's counsel believed he was "not in a position to properly evaluate the value of the claim because of the uncertain nature of future treatment."

[¶4.]	A little more than a year later, on September 22, 2021, the Meade County clerk of courts issued a notice of intent to dismiss the action due to absence of file activity for more than one year. The next day, Arrowsmith's counsel objected to the notice and explained that at the time of service, he had a conversation with

---

(. . . continued)
largest motorcycle rallies in the world. Travel South Dakota, *Sturgis Motorcycle Rally*, https://www.travelsouthdakota.com/trip-ideas/sturgis-motorcycle-rally (last visited Dec. 10, 2025). In recent years, the rally has drawn crowds of more than 600,000. *Id.*

AAA, whereby he "granted AAA an open extension of time to obtain counsel and answer the Complaint" because "Plaintiff's recovery was ongoing, [and] it was difficult at this that [sic] time to ascertain an appropriate valuation of the claim."

[¶5.] According to Arrowsmith's counsel, the obstacles to ascertaining the extent of Arrowsmith's damages included the fact that he resided in Canada, that he reinjured his wrist and required further treatment, and that his medical providers and subrogation lienholders resided in Canada. Arrowsmith's counsel reassured the court that at the time of the objection to the 2021 notice, Arrowsmith appeared "to have reached his maximum recovery" and that counsel was "in the process of obtaining subrogation information from several Canadian providers." Counsel further asserted Arrowsmith would "be in a position to discuss potential settlement of this matter with AAA" once he obtained all the relevant subrogation information.

[¶6.] The second notice of intent to dismiss the action was issued on November 23, 2022. Arrowsmith's counsel again objected, and his response closely resembled his September 2021 objection but contained additional information. Arrowsmith's counsel informed the court that he had "been in touch with AAA to provide updates on Plaintiff's ongoing care and to assure AAA that the open extension of time to answer the Complaint remains in effect." He addressed the statement he made in September 2021 that Arrowsmith had reached his maximum recovery and stated, "Since then, unfortunately, Plaintiff has experienced several setbacks with respect to his injuries." Counsel again assured the court that he was

awaiting information from Canadian providers, and that settlement discussions would commence once this information was "in hand."

[¶7.]    The third notice of intent to dismiss—which is the subject of this appeal—was issued by the clerk of courts on June 21, 2024. One week later, Arrowsmith's counsel filed a nearly identical objection to his 2021 and 2022 pleadings, but this objection also noted that Arrowsmith had "recently been evaluated regarding his disability and employability prospects and his impairment rating" and that counsel could "potentially finalize settlement" once he had this information. Aside from the three notices and Arrowsmith's corresponding objections, the record contains no evidence of additional activity.

[¶8.]    Odle obtained counsel in August 2024. Arrowsmith's counsel was first notified that Odle was represented when Odle's counsel emailed him on August 1, 2024. During the hearing on the motion to dismiss, both attorneys confirmed that during the August 1 communications, they discussed and reaffirmed the open-ended extension agreement that Arrowsmith originally granted to AAA. Odle's counsel indicated there were no emails or any letters explaining what was intended by the extension agreement, just that it was her "understanding that [Arrowsmith's counsel] was still . . . trying to obtain records and evaluate the case." Odle's counsel filed a formal notice of appearance six days later on August 7, 2024.

[¶9.]    After over two months of inactivity, Odle filed a motion to dismiss on November 20, 2024, for failure to prosecute. In her supporting brief, Odle's counsel alleged Arrowsmith's counsel "failed to pursue his case with 'due diligence and exhibited an egregious, unexplained and unreasonable failure to proceed with

promptitude.'" She pointed primarily to Arrowsmith's counsel's failure to present "any evidence supporting his excuses [for delay], such as correspondence to medical providers, time entries, emails, notes, or the like showing efforts to obtain the information." Odle suggested the failure to serve interrogatories, take depositions, or otherwise conduct discovery amounted to a lack of diligence.

[¶10.] In his brief opposing Odle's motion, Arrowsmith's counsel emphasized that he "was operating under the assumption that the agreement" for the open-ended extension of time to file an answer remained in place "for the benefit of both parties." He argued Odle should not be allowed to avoid liability by "disregarding an agreement that has benefitted him." In an attached affidavit, Arrowsmith's counsel explained both his conversations with AAA and the obstacles which caused delays in the prosecution, including aggravated injuries and differences in insurance coverage policies in Canada.

[¶11.] The court held a hearing on the motion to dismiss on January 9, 2025. After hearing the arguments of the parties, the circuit court orally granted Odle's motion to dismiss under SDCL 15-11-11 and SDCL 15-6-41(b) (Rule 41(b)). The court entered a written order on January 16, 2025, dismissing the action with prejudice.[2] Arrowsmith appeals, raising one issue for our review: whether the circuit court abused its discretion in dismissing the case for failure to prosecute under both SDCL 15-11-11 and Rule 41(b).

---

2.     After entry of the order, Arrowsmith obtained new counsel for this appeal.

## Standard of Review

[¶12.] Three standards of review apply to a circuit court's dismissal for failure to prosecute under SDCL 15-11-11 or Rule 41(b). *Olson v. Huron Reg'l Med. Ctr., Inc.*, 2025 S.D. 34, ¶ 17, 24 N.W.3d 405, 412. "[W]e review the circuit court's findings of fact under the clearly erroneous standard, while we apply the de novo standard when reviewing its conclusions of law." *Id.* (citation modified). We then evaluate "the circuit court's ultimate decision to dismiss" for failure to prosecute for "an abuse of discretion." *Id.* ¶ 18. "An abuse of discretion is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Id.* (quoting *Frye-Byington v. Rapid City Med. Ctr., LLP*, 2021 S.D. 3, ¶ 10, 954 N.W.2d 314, 317).

## Analysis

[¶13.] Circuit courts have the authority under both SDCL 15-11-11 and Rule 41(b) to dismiss civil actions for failure to prosecute. Several principles guide our review of a dismissal for failure to prosecute:

> First, this Court ordinarily will not interfere with the trial court's rulings in these matters.
>
> Second, a dismissal of an action for failure to prosecute is an extreme remedy and should be used only when there is an unreasonable and unexplained delay. An unreasonable and unexplained delay has been defined as an omission to do something "which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights."
>
> Third, the mere passage of time is not the proper test to determine whether the delay in prosecution warrants dismissal.
>
> Fourth, the plaintiff has the burden to proceed with the action. The defendant need only meet the plaintiff step by step.

> Finally, dismissal of the cause of action for failure to prosecute should be granted when, after considering all the facts and circumstances of the particular case, the plaintiff can be charged with lack of due diligence in failing to proceed with reasonable promptitude.

*Dakota Cheese, Inc. v. Taylor*, 525 N.W.2d 713, 715–16 (S.D. 1995) (internal citations omitted).

[¶14.] As we recently recognized in *Olson*, "despite the similar subject matter and overlapping considerations," SDCL 15-11-11 and Rule 41(b) are two distinct rules that require two separate analyses. 2025 S.D. 34, ¶ 20, 24 N.W.3d at 413. SDCL 15-11-11 is a "'clerical tool' that helps 'a court to clear its docket after a quota of inactivity is met.'" *Id.* ¶ 21 (quoting *Rotenberger v. Burghduff*, 2007 S.D. 7, ¶ 16, 727 N.W.2d 291, 295). Further, "a dismissal under SDCL 15-11-11 is without prejudice." *Id.* (citation omitted).

[¶15.] "By contrast, Rule 41(b) is 'a tool for sanctioning a party for delay or disobedience in the processing of a case.'" *Id.* ¶ 22 (quoting *Eischen v. Wayne Twp.*, 2008 S.D. 2, ¶ 39, 744 N.W.2d 788, 800 (Konenkamp, J., dissenting)). Unlike dismissal under SDCL 15-11-11, dismissal under Rule 41(b) "operates as a dismissal with prejudice unless the judge explicitly states otherwise." *Rotenberger*, 2007 S.D. 7, ¶ 17, 727 N.W.2d at 295. Because dismissal with prejudice is an "extreme measure," it should only be used when there is an "unreasonable and unexplained delay." *Eischen*, 2008 S.D. 2, ¶ 13, 744 N.W.2d at 795 (quoting *Dakota Cheese*, 525 N.W.2d at 715). Put plainly, we have "an institutional preference for resolving cases on their merits." *Olson*, 2025 S.D. 34, ¶ 20, 24 N.W.3d at 413 (citation omitted).

**Dismissal per SDCL 15-11-11**

[¶16.]      SDCL 15-11-11 provides:

> The court may dismiss any civil case for want of prosecution upon written notice to counsel of record where the record reflects that there has been no activity for one year, unless good cause is shown to the contrary. The term "record," for purposes of establishing good cause, shall include, but not by way of limitation, settlement negotiations between the parties or their counsel, formal or informal discovery proceedings, the exchange of any pleadings, *and written evidence of agreements between the parties or counsel* which justifiably result in delays in prosecution.

(Emphasis added.) The text of the statute establishes a two-prong test: "Before a circuit court may exercise its discretion and dismiss a case for want of prosecution there must be a) no activity for one year, and, b) no showing of good cause which excuses the inactivity." *Olson*, 2025 S.D. 34, ¶ 24, 24 N.W.3d at 413–14 (quoting *Annett v. Am. Honda Motor Co.*, 1996 S.D. 58, ¶ 14, 548 N.W.2d 798, 803).

[¶17.]      Under the unique facts of this case and considering the open-ended extension agreement between the parties, we decline to address whether verifiable record activity existed and instead consider whether good cause existed to justify the delay. As an initial matter, Odle argues that Arrowsmith waived his right to assert good cause or lack of egregious conduct under Rule 41(b) by failing to raise the issue below. His primary argument rests on the assertion that Arrowsmith made no direct reference to the statutes in his brief in opposition or at the circuit court hearing when the court considered Odle's motion to dismiss for failure to prosecute. He further emphasizes the fact that Arrowsmith did not use the terms "good cause" or "egregiousness" verbatim in his reply brief or at the hearing.

[¶18.]     At the hearing and in his briefing, though, Arrowsmith directly replied to Odle's motion to dismiss under SDCL 15-11-11 and Rule 41(b).  This response, which was based on the premise that the open-ended extension to file an answer provided good cause for his inactivity, adequately embraced SDCL 15-11-11 and Rule 41(b) as the basis for reversal.  Arrowsmith filed an objection to the proposed judgment, renewing the arguments submitted in his brief and those made at the hearing.  This objection, combined with the arguments made in his brief in opposition and at the hearing in front of the circuit court, was sufficient to preserve this matter for appeal.

[¶19.]     Under SDCL 15-11-11, "[g]ood cause for delay requires 'contact with the opposing party *and* some form of excusable conduct or happening which arises other than by negligence or inattention to pleading deadlines.'"  *Annett*, 1996 S.D. 58, ¶ 28, 548 N.W.2d at 804 (quoting *Dakota Cheese*, 525 N.W.2d at 717).  Under this "good cause" provision, we must "evaluate the time frame of inactivity in light of the circumstances surrounding the case, and not merely use the passage of time as the test to determine whether dismissal is warranted."  *Id.* ¶ 22.

[¶20.]     We have previously acknowledged that "[c]ourts have held that an agreement extending the time within which to answer is a reflection of the parties['] intent to defer action in the case and that dismissal for failure to prosecute is, therefore, precluded."  *London v. Adams*, 1998 S.D. 41, ¶ 15 n.3, 578 N.W.2d 145, 149 n.3 (collecting out-of-state cases).  In these cases, "courts conclude that the mutual agreement of the parties for an extension of time to answer establishes mutual intent 'to excuse [each] other from diligence both in answering and taking

default."' *Id.* (alteration in original) (quoting *Wheeler v. Payless Super Drug Stores*, 238 Cal. Rptr. 885, 889 (Cal. Ct. App. 1987)).

[¶21.]     In *Annett,* we held that the "serious nature" of plaintiff's injuries and plaintiff's difficulty in finding an expert witness did not constitute good cause for delay, noting in particular the lack of any communication between the parties within the one-year time frame. 1996 S.D. 58, ¶¶ 22–28, 548 N.W.2d at 803–04. More recently, in *Lamar Advertising of South Dakota, Inc. v. Heavy Constructors, Inc.*, we rejected the argument that informal settlement negotiations, among other activity, constituted good cause for delay, noting in particular that "[t]here was no *formal agreement* between the parties, written or otherwise, to extend the [settlement] deadline." 2010 S.D. 77, ¶ 19, 790 N.W.2d 45, 51 (emphasis added).

[¶22.]     Here, however, we have a formal agreement between the parties to extend pleading deadlines. In Odle's briefing and at the hearing before the circuit court, Odle's counsel conceded the two parties had an agreement: "Certainly I agree that they granted me an indefinite extension to file an answer . . . ." Odle's counsel also acknowledged that the parties reaffirmed the open-ended extension to file an answer during their discussion on August 1, 2024. If Odle wished to terminate the agreement, he was able to file an answer to the complaint at any point during the litigation, but the record is void of any evidence that either party terminated the open-ended extension agreement prior to Odle's motion to dismiss. In the affidavit submitted by his counsel, Arrowsmith reaffirmed that he is "prepared to move forward immediately with discovery and a scheduling order" if "Odle and his representation wishes to now terminate the agreement and file an Answer." Any

delay in prosecution here was attributable to reliance on the mutual agreement between the parties, not due to negligence or inattention to pleading deadlines on Arrowsmith's behalf.

[¶23.]     In agreeing to an open-ended extension, Arrowsmith essentially agreed to forgo pursuit of a default judgment. It follows that Odle correspondingly agreed to forgo pursuit of a motion to dismiss for failure to prosecute. To hold otherwise would be to divest Arrowsmith of the benefit of the mutual agreement while allowing Odle to reap the full benefit of the agreement in avoiding a default judgment. The existence of an open-ended extension agreement between the parties constituted sufficient good cause for delay under SDCL 15-11-11, and the circuit court's decision granting Odle's motion to dismiss for failure to prosecute under SDCL 15-11-11 constitutes "a choice outside the range of permissible choices." *Frye-Byington*, 2021 S.D. 3, ¶ 10, 954 N.W.3d at 317 (citation omitted).

**Dismissal per Rule 41(b)**

[¶24.]     The relevant portion of Rule 41(b) provides:

> For failure of the plaintiff to prosecute or to comply with this chapter or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this section . . . operates as an adjudication upon the merits.

SDCL 15-6-41(b). Unlike SDCL 15-11-11, "dismissal under Rule 41(b) depends upon whether a plaintiff's conduct rises to the level of egregiousness which should preclude the case from proceeding." *Olson*, 2025 S.D. 34, ¶ 33, 24 N.W.3d at 415 (citation modified).

[¶25.]     Rule 41(b) must still adhere to our preference to adjudicate cases on their merits where possible, though, so dismissal should only be used where there is an "unreasonable and unexplained delay." *Dakota Cheese*, 525 N.W.2d at 715. "An unreasonable and unexplained delay has been defined as an omission to do something which the party might do and might reasonably be expected to do towards vindication or enforcement of his rights." *Id.* at 715–16 (citation modified). Despite the circuit court's authority to do so, we have a "strong aversion to the sanction of dismissal" and encourage courts to use "other, less drastic, means of encouraging promptitude before outright dismissal." *Olson*, 2025 S.D. 34, ¶ 38, 24 N.W.3d at 416.

[¶26.]     We recently recognized five possible factors that a circuit court, "in addition to considering the presence of an unreasonable and unexplained delay in prosecution," could consider in determining whether dismissal under Rule 41(b) is warranted:

> (1) [W]hether the plaintiff had received notice that further delays would result in dismissal; (2) whether the judge adequately assessed the efficacy of lesser sanctions before dismissal was ordered; (3) whether the conduct of the party or the attorney was willful or in bad faith; (4) the degree of actual prejudice to the opposing side or the substantial likelihood of future prejudice in the event of future delay; and (5) the merits of the plaintiff's claim for relief.

*Id.* ¶ 40, 24 N.W.3d at 417 (alteration in original) (quoting *Eischen*, 2008 S.D. 2, ¶ 42, 744 N.W.2d at 801 (Konenkamp, J., dissenting)). "The factor approach has its advantages, though no factor should be preeminent; nor should a list of factors be viewed as a talismanic formulation of elements. But, in many ways, these factors are eminently practical." *Id.* ¶ 41.

-12-

[¶27.]        In *Jenco, Inc. v. United Fire Group*, we upheld the circuit court's dismissal for failure to prosecute where there had been "no settlement negotiations, no discovery, or exchange of pleadings, *or any agreements between parties or counsel [to justify] the delay*." 2003 S.D. 79, ¶ 11, 666 N.W.2d 763, 766 (emphasis added). After being expressly ordered by the court to obtain new counsel, plaintiff Jenco did not act for thirty months. *Id.* ¶ 18, 666 N.W.2d at 767. Jenco presented no evidence that he "even attempted to do anything whatsoever" within the thirty-month period, and we affirmed the circuit court's finding that Jenco's "inaction and delay were egregious." *Id.* ¶¶ 11, 13, 19, 666 N.W.2d at 766, 768.

[¶28.]        Five years later, in *Eischen*, we affirmed a finding of egregious conduct where "there were only two other acts [initiated by plaintiffs] during the ensuing three years and nine months." 2008 S.D. 2, ¶ 20, 744 N.W.2d at 797. Additionally, in *Eischen*, "[p]laintiff's counsel repeatedly caused the postponement of hearings or failed to deliver responsive pleadings in a timely manner as agreed." *Id.*

[¶29.]        Nothing in the record before us rises to the level of egregiousness demonstrated in *Jenco* and *Eischen*. Again, here, the parties entered into an open-ended extension agreement, justifying Arrowsmith's delay. The major difference between *Jenco* and *Eischen* and Arrowsmith's situation is that the plaintiffs in both cases failed to respond to outstanding court orders or within mutually agreed upon pleading deadlines. We held these were unreasonable and unexplained actions and delays. Here, however, there was no outstanding court order that Arrowsmith failed to comply with as the plaintiff did in *Jenco*, and nothing in the record suggests Arrowsmith's counsel failed to deliver responsive pleadings as counsel did

in *Eischen*. Instead, the delay here can be explained by Arrowsmith's reliance on the open-ended extension agreement.

[¶30.] Most recently, in *Olson*, we refused to uphold a finding of egregious conduct and reversed dismissal, concluding the circuit court "gave too much weight to a temporal delay in activity and did not consider other efforts that were ongoing and moving the case forward." 2025 S.D. 34, ¶ 46, 24 N.W.3d at 418. These efforts included compiling medical records, responding to defendants' requests, and communicating with defendants' attorney. *Id.* ¶ 37, 24 N.W.3d at 416. We held plaintiff's counsel's actions were "reasonable, responsive to defendants' requests, and did not prejudice the defendants." *Id.*

[¶31.] Unlike plaintiff's counsel in *Olson*, Arrowsmith's counsel did not provide the circuit court with evidence, aside from his own affidavit, that confirmed the obstacles causing delays. He presented no evidence that he was actively "compiling medical records" or "responding to defendant['s]requests" as the plaintiff was in *Olson*; nor did Odle or his counsel make any request to Arrowsmith that was ignored. Arrowsmith's counsel was, however, "communicating with defendant's attorney." The conversation between Odle's counsel and Arrowsmith's counsel in August was about the status of the case—something "the party might do and might reasonably be expected to do" to ensure that the case remains on track for resolution. *Dakota Cheese*, 525 N.W.2d at 715–16 (citation omitted). It was during this call that the extension agreement was reaffirmed. Six days after this conversation, Odle's counsel filed a notice of appearance. The record contains no

evidence indicating Odle intended to terminate the extension agreement until Odle's counsel filed a motion to dismiss in November.

[¶32.]     As Arrowsmith admitted, while he "could have maintained better communication" with Odle—who was notably unrepresented until August 2024—"his conduct is explainable, not egregious." In light of the existing open-ended extension agreement and the discussions between counsel reaffirming the agreement two months before Odle filed his motion, Arrowsmith's actions did not rise to the level of egregiousness required by Rule 41(b) to warrant dismissal, and the circuit court abused its discretion in so concluding.

[¶33.]     Not only is there a lack of egregious conduct here, but in applying the factors laid out in *Eischen* and *Olson*, the evidence in the record weighs against granting Odle's motion to dismiss. It is true that Arrowsmith received two prior notices of intent to dismiss from the clerk of courts. However, the circuit court does not appear to have considered lesser sanctions before dismissal was ordered. Additionally, Odle did not allege that Arrowsmith's counsel was acting in bad faith, and no evidence in the record would support such an allegation. And finally, Odle did not present evidence that he would be substantially prejudiced by further delays, and there is "no allegation that the elapsed time prior to [Odle's motion] to dismiss compromised [Odle's] defenses in some way, such as through the destruction of evidence or the loss of witness testimony." *Olson,* 2025 S.D. 34, ¶ 45, 24 N.W.3d at 418.

## Conclusion

[¶34.] Under the circumstances, we conclude the circuit court abused its discretion in granting Odle's motion to dismiss for failure to prosecute under both SDCL 15-11-11 and Rule 41(b) and remand for further proceedings consistent with this opinion.

[¶35.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.

[¶36.] GUSINSKY, Justice, not having been a member of the Court at the time this action was considered by the Court, did not participate.